IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE AUGUST TERM THEREOF, HELD AT CHARLES-
TOWN, IN THE COUNTY OF JEFFERSON, COMMENC-
ING ON THE SIXTH DAY OF AUGUST, 1875, AND
ENDING ON THE THIRTEENTH DAY OF
SEPTEMBER, 1875.

---

## CHARLESTOWN.

### John Slack, Sr., and Others *v.* John J. Jacob and Others.

September 13, 1875.

1. It is the duty of the court to uphold a statute when the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature may require, in some cases, where the meaning of the Constitution is in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural Where the meaning of the Constitution is clear, the court, if possible, must give the statute such a construction as will enable it to have effect.

2. It is always to be presumed that the Legislature designed the statute to take effect, and not to be a nullity.

3. Wherever an act of the Legislature can be so construed and applied as to avoid a conflict with the Constitution, and give it the force of law, such construction will be adopted by the courts.

4. The performance of many duties, which the Legislature may provide for by law they may refer either to the chief executive of the state, or at their option to any other executive or ministerial officer.

5. Generally, the words of a statute are to be taken by their ordinary and familiar significance and import, and regard is to be had to their general and proper use.

6. The expediency or inexpediency of an act is a question for the Legislature and not for the courts.

7. The preamble may be consulted in some cases to ascertain the intentions of the Legislature. But it is chiefly from the main body the purview of the act, that the will of the Legislature is to be learned; when this is clear and express, the preamble will not avail to contradict it.

8. That part of section thirty-eight of the sixth article of the Constitution which is in these words: "Nor shall any Legislature, authorize the payment of any claim or part thereof hereafter created against the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements shall be null and void," does not apply to claims predicated upon simple justice and right, and does not prevent the Legislature from voluntarily doing justice and right, when the claim is not predicated on a contract made without express authority of law.

9. Courts are not authorized to look into the preamble or recitals of an act for alleged or supposed fraud, mistakes, or errors of judgment in the Legislature, upon which to declare the enactment void.

10. Courts will not presume fraudulent intent and corrupt purposes on the part of the Legislature, but will presume the contrary.

11. The act of the Legislature passed on the 20th of February, 1875, in these words, viz:

. "An Act to remove the seat of government temporarily to Wheeling.

WHEREAS, Henry K. List, Michael Reilly, John McLure, Geo. W. Franzheim and Simon Horkheimer, citizens of Wheeling, have agreed to furnish the State without cost thereto, suitable accommodations, in said city, for the legislative, executive and judicial departments of the State, including the State library, should the seat of government of the State be removed temporarily to said city; and

WHEREAS, It appears to the Legislature that the Capital of the State should be located at a more accessible and convenient point; therefore,

1875.
August Term.

John Slack, Sr., and others,
v.
John J. Jacob and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

"Be it enacted by the Legislature of West Virginia:

"I. That on and after the expiration of ninety days from and after the the passage of this act, until hereafter otherwise provided by law, the seat of government of the State of West Virginia shall be at the city of Wheeling.

"The Governor is hereby authorized to cause suitable accommodations to be prepared in the city of Wheeling for the several departments of the State Government, including the Legislative, Executive and Judicial Departments, and to remove thereto, and cause to be properly placed or arranged the books, papers and movable property, now in the city of Charleston, belonging to the several State offices, including the State library, the said Henry K. List, Michael Reilly, John McLure, Geo. W. Franzheim and Simon Horkheimer, agreeing to indemnify the State against the expenses thereby incurred.

"II. All acts and parts of acts in conflict with the provisions of this act are hereby repealed:"

The said act of the Legislature is constitutional and valid.

12. The object of said act is sufficiently explained in the title thereto under the provisions of the thirtieth section of the sixth article of the Constitution of the State.

13. A judge of a circuit court in vacation, or a court of equity, had not power or authority to enjoin by injunction John J. Jacob as a citizen, or as Governor of the State, or other officer or officers person or persons acting under his authority as Governor of the State, or by his direction, in the execution of said act of the Legislature from removing from the city of Charleston to the city of Wheeling the papers and movable property in said act mentioned, until the constitutionality and validity of the said act was judicially determined, although the bill praying the injunction alleged the unconstitutionality of the act; the powers and duties springing from said act and the Constitution being executive and of such nature that enjoining the Governor from executing said act was an invasion by the judiciary of executive powers and duties devolved upon the Governor as chief executive of the State.

14. The Judiciary can not inquire into the motives and necessities which may have superinduced the passage of an act.

15. The courts have no right to set aside, to arrest or nullify a law passed in relation to a subject within the scope of the legislative authority, on the ground that it conflicts with their notions of natural right, absolute justice or sound morality.

The case is fully stated in the opinion of the Court.

The Hon. Joseph Smith, judge of the circuit court of Kanawha county, presided at the trial below.

*James H. Ferguson, William A. Quarrier* and *E. Willis Wilson* for the appellants.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

*Attorney General Mathews, Daniel Lamb* and *W. W. Arnett* for the appellees.

HAYMOND, PRESIDENT :

John Slack, Sr., John T. Cotton, Edward C. Stolle, John C. Ruby, John D. White, Alexander H. Wilson and Gustave Stolle, on behalf of themselves and all other citizens and tax payers of West Virginia, except the defendants, filed their bill of injunction in the circuit court of the county of Kanawha, in said State, on the first Monday in May, 1875, in which they charged and alleged, substantially, as follows, viz : That they are citizens, voters, owners of real and personal property and tax payers of the city of Charleston, in said county ; that by section twenty-two, article four of the Constitution of this State, of 1863, it was provided that "the seat of government shall be at the city of Wheeling, until a permanent seat of government be established by law ;" that, by an act of the Legislature passed February 26, 1869, chapter seventy-three, entitled, "An act permanently locating the seat of government for this State" it was provided, by section one of said act, that, "The permanent seat of government for this State is hereby located at the town of Charleston, in the county of Kanawha ;" that during the latter part of the year 1870, a number of citizens of said town of Charleston and vicinity, having completed the building for the use of the Legislature and State officers, a building in every respect, admirably adapted to the purposes of a state house, and the most capacious, convenient and suitable one within the limits of the State, for such purposes, tendered the same to the Governor, William E. Stevenson, who was duly authorized by said act, to receive the same on behalf of the State, for the use of the Legislature and the State officers, without charge, so long as the same should

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

be used by the State as its capitol; that said Governor William E. Stevenson, accepted this generous tender, on behalf of the State, and occupied the said building for the purposes aforesaid; that in consequence of said permanent location of the seat of government, there has been a large accession to the population of said town, now city of Charleston, business enterprise largely increased under its stimulating influences, and real estate, particularly, within the limits of said city, and especially the property of your orators, materially advanced in value without exception; that by section twenty, article six of the State Constitution of 1872, it is provided that "The seat of government shall be at Charleston, until otherwise provided by law;" that the Legislature on the —— day of February, 1875, passed a pretended act, entitled, "An act to remove the seat of government temporarily to Wheeling," a certified copy of which act is filed with the bill and is as follows, viz: "An Act to remove the seat of government temporarily to Wheeling.

Whereas, Henry K. List, Michael Riley, John McLure, George W. Franzheim, and Simon Horkheimer, citizens of Wheeling, have agreed to furnish the State, without cost thereto suitable accommodations in said city for the Legislative, Executive and Judicial departments of the State, including the State Library should the seat of government be removed, temporarily, to said city; and, whereas, it appears to the Legislature that the capital of the State should be located at a more accessible and convenient point; therefore, Be it enacted by the Legislature of West Virginia:

" 1. That on and after the expiration of ninety days from and after the passage of this act, until hereafter otherwise provided by law, the seat of government of the State of West Virginia shall be at the city of Wheeling. The Governor is hereby authorized to cause suitable accommodations to be prepared in the city of Wheeling for the several departments of the State government, including the Legislative, Executive and Judicial depart-

ments, and to remove thereto, and cause to be properly placed and arranged the books, papers and movable property, now in the city of Charleston, belonging to the several State offices, including the State Library. The said Henry K. List, Michael Reilly, John McLure, George W. Franzheim and Simon Horkheimer agreeing to indemnify the State against the expense thereby incurred.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

" 2. All acts, and parts of acts, in conflict with the provisions of this act are hereby repealed."

They further allege that said pretended act is utterly null and void, for the following reasons:

*First.* The intent of the Legislature, that the seat of government shall be moved to Wheeling, and that suitable accommodations shall be furnished for the different departments of the State government, without cost to the State, cannot be carried into effect, as the parties named in the act and preamble are in no manner legally liable under the agreements therein mentioned; and that said pretended act contains no undertaking or contract on the part of the parties named in the preamble that they will " furnish to the State, without cost thereto, suitable accommodations in Wheeling for the Legislative, Executive and Judicial departments of the State ;" and that it is, since the passage of the act, a matter of option with the parties aforesaid whether or not they will furnish said accommodations and buildings. And the State is now in this condition, that the object of said pretended act, *i. e.,* a removal without cost, can only be effectuated at the option of the parties named in the preamble; and, in effect, the Legislature has delegated to the aforesaid parties the power to remove, or not, the seat of government, at their option and pleasure.

*Second.* The act authorizes and directs the Governor to perform certain duties, requiring the expenditure of money, without either an appropriation or a power vested in him, or any one else, to contract on behalf of the

78

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

State to carry its provisions into effect. Section three, article ten of the Constitution, expressly provides, that " No money shall be drawn from the treasury but in pursuance of an appropriation made by law." And they allege and charge that no means have been provided by law to enable the Governor to carry out the provisions of said act; and by section thirty-eight of article six of the Constitution, it is provided, " nor shall any Legislature authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements shall be null and void."

They further allege that said pretended act is unconstitutional in this.

*First,* section twenty, of article six of the Constitution of 1872 contemplates a permanent removal, if any, and not a temporary removal of the seat of government, as is expressed in the title of said pretended act. The Constitution of 1863 in Article four, section twenty-two, provided that the seat of government should be at Wheeling until permanantly located by law. Section twenty of article six of the present Constitution provides that the seat of government shall be at Charleston until otherwise provided by law; that the proper construction of this section of the Constitution is to restrict the power of the Legislature to make any change in the seat of government, except a *permanent* change and that it was intended by the framers of the Constitution that the seat of government should remain at Charleston until permanently located elswhere; that said section is not a useless grant of power, which the Legislature would have had without such grant, but a restraining clause intended to prevent the evils of a temporary removal. If therefore the act can be construed as a temporary removal, it is unconstitutional and void.

*Second.* The object of said pretended act is not expressed in the title thereof as required by section thirty,

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

article six of the State Constitution, the title expressing the temporary object, and the act providing no time or date for its expiration; that, by familiar rules of construction, all acts are permanent, or as much so as the Legislature can make them, unless in the body of the act there is some definite time mentioned, in which the provisions of the act cease and determine. There is no such provision in this act, and therefore it is an act for the permanent removal, and *not* for the *temporary* removal of the seat of government; that the provision of the Constitution is mandatory, that the title of an act shall correspond with the body of the law, and section twenty-one of article eight of the Constitution expressly makes it the *duty* of the courts to declare all unconstitutional acts null and void.

*Third.* That the constitution confers upon the Legislature the power to enact laws, based upon the supposed wisdom and discretion of the Legislature. It does not contemplate that their discretion shall be influenced by pecuniary benefits conferred, either upon the members or upon the State, by private individuals. The said act, in effect, recites that the Legislature removed the seat of government to Wheeling by reason of the offer of pecuniary aid and assistance, supposed to be tendered the State by certain individuals claiming to be citizens of Wheeling; that a law which, upon its face, shows that the Legislature was induced to enact it, by reason of pecuniary considerations, is unconstitutional, null and void; that the act is unconstitutional, null and void for other reasons appearing upon the face thereof; that all the powers and duties, supposed to be conferred and imposed upon John J. Jacob by the said act, who is named therein as Governor, are ministerial powers and duties, and not executive or political; that said supposed powers and duties do not involve the exercise of any executive discretion on the part of said John J. Jacob, and that they are not acts, powers or duties conferred

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

upon the Governor by the constitution; and that all such acts, powers and duties could as well have been conferred upon any other person or persons. But that, nevertheless, the said John J. Jacob, Edward A. Bennett, John S. Burdett, Benjamin W. Byrne, Charles Hedrick, John L. Cole, J. Bernard Peyton and Joseph S. Miller, under color of law, and their respective offices, (they being at present the incumbents of State and other offices, as follows: "John J. Jacob, Governor; Edward A. Bennett, Auditor; John S. Burdett, Treasurer; Benjamin W. Byrne, Superintendent of Schools; Charles Hedrick, Secretary of State; John L. Cole, Librarian; J. Bernard Peyton, Clerk of the House of Delegates and Keeper of the Rolls, and Joseph S. Miller, Clerk of the Senate, in and for the State of West Virginia,) now threaten to carry into execution the provisions of said pretended act; that plaintiffs are informed, believe and charge, that they intend so to do, by removing the books, papers, archives, furniture and other movable property, now in said city of Charleston, belonging to the several State offices, including the State Library; that if the removal of the State government be accomplished, it will be to the great injury of the public interests of the State, and unnecessarily increase the burden of taxation to meet the expenses which will of necessity have to be incurred for the cost of removal and providing buildings, &c., for the different departments of State; and that the individual interests of plaintiffs, especially, will thereby be materially injured and affected by the certain depreciation in value of their real estate, and the depression of their business, in said city of Charleston; that great injury and damage will be inflicted upon them, and all other good citizens of the State, by the illegal removal of the public archives to Wheeling, under the pretended authority of an unconstitutional act. The bill then prays that said John J. Jacob, Edward A. Bennett, John S. Burdett, Benjamin W. Byrne, Charles Hedrick, John L. Cole, J. Bernard Peyton, and Joseph S. Miller, their

agents, employees, and all other persons acting under, or by virtue, of their authority, or by the authority of either or any of them, and all other persons whatsoever aiding or assisting therein, may be restrained and inhibited, by an injunction, from proceeding to execute the provisions of said pretended act of the Legislature. The bill then prays that a writ of injunction be directed to the last named persons, (the defendants,) their agents, employees, and all other persons whatsoever, aiding or assisting therein, commanding them and each of them, absolutely, to desist and refrain from proceeding to remove said books, papers, archives, furniture, and other movable property, including the State library, or any part thereof, from the said city of Charleston, or in any other manner carrying said pretended act of the Legislature into execution. The bill is verified by the affidavit of one of the plaintiffs.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

On the 30th of March, 1875, an order was made in chambers, by Judge Ward of the circuit court as follows: "To the clerk of the circuit court of the county of Kanawha:

"Deeming the matters and things set forth in this bill worthy of thorough judicial investigation, an injunction is hereby awarded to the plaintiffs, according to its prayer, enjoining, and restraining and inhibiting His Excellency John J. Jacob, Governor; Edward A. Bennett, Auditor; John S. Burdett, Treasurer; Benjamin W. Byrne, Superintendent of Schools; Chas. Hedrick, Secretary of State; John L. Cole, Librarian; J. Bernard Peyton, Clerk of the House of Delegates and Keeper of the Rolls; and Joseph S. Miller, Clerk of the Senate, in and for the State of West Virginia both in their official and individual capacities, their agents, employees, and all other persons whatsoever, aiding or assisting therein, from removing, aiding in, or assisting therein, or directing the removal of the books, papers, archives, furniture and other movable property of this State, in-

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

cluding the State Library, the records and proceedings of the Legislative and Executive departments, or any part thereof, from the city of Charleston, in the county of Kanawha, West Virginia, to the city of Wheeling, or elsewhere, or in any manner carrying into execution the act of the Legislature mentioned in the bill passed February ——, 1875, entitled 'An act to remove the seat of government temporarily to Wheeling' until the further order of said Kanawha county, or of a Judge in vacation. But this order is not to take effect until the plaintiffs, or some person or persons for them, enter into and acknowledge a bond, with good security, in the penalty of $5,000, conditioned to pay all such costs as may be awarded against them, and all damages sustained in the event this injunction is dissolved."

The process in the cause was issued on the 30th day of April, 1875, with the endorsement thereon by the clerk that bond and security had been given, as required by the order of the judge, and the restraining order was also endorsed.

The process was executed on all the defendants on the 1st day of May, 1875, except Joseph S. Miller, on whom process does not appear to have been served.

On the 17th day of May, 1875, defendant John Cole appeared in said circuit court and filed his answer to the bill, to which the plaintiffs replied generally, and the cause as to said Cole was, by consent, set for hearing. And thereupon defendant Cole moved for a dissolution of the injunction.

On the same day defendants John S. Burdett, State Treasurer, Edward A. Bennett, Auditor, and B. W. Byrne, Superintendent of Free Schools, filed their joint and several answers to the bill, to which the plaintiffs replied generally; and by consent the cause was set for hearing as to them, and they also moved the court for a dissolution of the injunction.

The substantial purport of each of said answers is denying the unconstitutionality of the law. Defendants John J. Jacob, Governor, &c., and others do not appear to have answered or appeared in the cause.

1875.
August Term.
John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

On the 18th day of May, 1875, the cause came on to be heard before the said circuit court on the bill and exhibits, the separate answer of defendant John L. Cole, the answer of defendants Burdett, Bennett and Byrne, replications thereto, and on the motion of the said defendants, who answered, to dissolve the injunction, and the cause set for hearing as to said defendants, who answered : Upon consideration of all which the said circuit court, in its decree then rendered in the cause, states and says : " The court is of opinion and doth decide, that the complainants have sufficient interest in the subject matter complained of in the bill to institute this suit, and that this court has jurisdiction to ascertain and determine the constitutionality of the law described in the bill, and to enjoin the removal of the archives of the State and the State library from the city of Charleston to the city of Wheeling until the court has passed upon the constitutionality of the said law. And the court, although it entertains some doubts as to the constitutionality of the law complained of, is of opinion that it is the duty of the court, when it is uncertain and doubtful, to give the law the benefit of the doubt, therefore the court is of opinion that the law mentioned and described in the bill, and which purports to remove the seat of government from Charleston to Wheeling is constitutional and valid. It is, therefore, adjudged, ordered and decreed, that the injunction awarded the complainants in this cause as to the defendants Cole, Bennett, Byrne and Burdett be and the same is hereby dissolved, and that the bill be dismissed as to them, and that the injunction be also dissolved as to the defendants Jacob, Hedrick, Miller and Peyton, who have not answered," &c.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

On motion of the plaintiffs, the decree dissolving the injunction was suspended by the court until the 27th day of May, 1875, for the purpose of allowing the plaintiffs to apply to this court for an appeal, &c.

The plaintiffs applied to one of the Judges of this Court, in vacation, by petition, with assignments of error therein, for an appeal from "so much of the decree aforesaid as decides the said pretended act of the Legislature to be constitutional and valid, and dissolves the said injunction and dismisses the said bill." And on the 20th day of May, 1875, the Judge to whom such application was made. Allowed the appeal as petitioned for, to take effect as a *supersedeas*, upon bond being given as required by law, &c.

It is for this Court now to determine upon said appeal whether the decree of said circuit court, so appealed from, should be reversed, or affirmed.

The errors assigned in the petition for an appeal to this Court from the decree of the circuit court are the following :

"*First*. The court erred in deciding the said pretended act of the Legislature to be a valid and constitutional exercise of Legislative power.

*Second*. The court should have decided that the said pretended act was unconstitutional and void and it was error not to do so.

*Third*. The court erred in dissolving the injunction in this case, instead of perpetuating the same and,

*Fourth*. The court erred in dismissing the bill of your petitioners."

It is, however, claimed by the defendants that the decree, so far as it dissolves the injunction and dismisses the bill, is right and proper for several reasons other than the mere fact that the said act is constitutional, among which is, that the court had no jurisdiction or authority to award the injunction and entertained the bill.

These assignments of error made in the petition afore-said were evidently intended to embrace all the reasons alleged in the bill, by the plaintiffs why the act of the Legislature in question is invalid and the cause, as before us, has been so argued, the counsel on each side orally, and in print and in writing. If we hold the act in question to be valid and binding as a law, such holding will dispose of one of the principle questions in this case, because an act of the Legislature which is valid is binding upon the courts as well as all the officers and citizens. And it is clear that the courts have no power, jurisdiction or authority, to prevent the execution of a valid law. Counsel for plaintiffs and mostly all the counsel for the defendants have insisted that we shall now pass upon the validity and constitutionality of the act in question, even though we were of opinion that the case might now, be disposed of by as upon some other question. The propriety and necessity of the determination of the validity or invalidity of the act at this time by this Court seems to be admitted, generally, and is demanded by the public interest and welfare, under the circumstances growing out of the passage of the act, and the pendency of this cause. Not to determine the validity of the act now, under all the circumstances and surroundings would amount, almost, to a calamity to the State. Under these circumstances we feel it to be our duty to pass upon and determine the validity of the act, and in fact we think it not improper for us to do so, under any view of the case, as presented by the record, according to the principles which have been adjudicated in other causes by other courts of final resort. While it is our duty, not unfrequently, to enquire into and pass upon the validity or invalidity of an act of Legislature, we always do so with great delicacy. When the courts are called upon to pronounce the invalidity of an act of legislature, passed with all the forms and ceremonies required by the Constitution, they should approach the question with

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

great caution and delicacy, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. And it is the duty of the court to presume in favor of the validity of the act, until its violation of the constitution is proved beyond all reasonable doubt. *Bridges v. Shall-cross*, 6 W. Va., 574 and the numerous authorities cited in support of these propositions in that case. It is the duty of the court to uphold a statute when the conflict between it and the Constitution is not clear and the implication which must always exist that no violation has been intended by the legislature may require in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. For as a conflict between the statute and Constitution is not to be implied, it would seem to follow where the meaning of the Constitution is clear, *that the court, if possible, must give the statute such a construction as will enable it to have effect.* This is only saying, in another form of words, that the court must construe the statute in accordance with the legislative intent; since it is always presumed that the legislature designed the statute to take effect, and not to be a nullity. Cooley's Con. Lim., 184, 185. Whenever an act of the Legislature can be so construed and applied as to avoid a conflict with the Constitution and give it the force of law, such construction will be adopted by the courts, *Noland v. Marsh*, 19 Ill. 384; Cooley on Con. Lim. 185. In case of a reasonable doubt of the constitutionality of the act the doubt must be solved in favor of the legislative action, and the act must be sustained. The courts should sustain legislative action when not clearly satisfied of its invalidity. *Bridges v. Shallcross*, 6 W. Va. 574. The legislative authority, to be efficient, must have large discretion in determining the means through which its acts shall be executed, and the performance of many duties which they provide for by law they may refer

either to the chief executive of the State, or at their op-

1875.
August Term.

John Slack, Sr,.
and others,
v.
John J. Jacob
and others.

tion, to any other executive or ministerial officer. Coo-
ley's Con. Lim. 114, 115; *Bridges v. Shallcross*, 6 W.
Va. 575. "When a plain and palpable infraction of con-
stitutional provision is shown in a law, upon the valid-
ity of which it is called upon to decide, it is, of course,
one of the highest and most solemn duties of the court
to declare such law inoperative and void. If, however,
it be only upon slight implication or inconclusive reason-
ing that the supposed infraction can be made out, the court
should never undertake to rescind and annul the solemn,
deliberate act of the legislative department of the govern-
ment. To doubt in such a case should be to affirm."
Opinion of Judge Lee in *Eyre v. Jacob, Sheriff*, 14 Gratt.
422. Generally, the words of a statute are to be taken
by their ordinary and familiar signification and import
and regard is to be had to their general and proper use.
Potter's Dwarris on Statutes and Constitutions, 193;
Cooley's Con. Lim. 58. The expediency or inexped-
iency of the passage of the act in question by the Legis-
ure is not before us for adjudication. If it is our
conviction that the act is valid and not repugnant to the
Constitution our duty compels us so to declare and de-
termine. With the principles and views before us
which we have announced and others hereafter referred
to, we will now proceed to the consideration of the con-
stitutionality and validity of the act in question.

The title of the act is supposed to express its object
with more or less distinctness. The title to the act in
question is, as we have seen, "An act to remove the seat
of government temporarily to Wheeling."

The preamble to the act is in these words: "Whereas,
Henry K. List, Michael Reilly, John McLure, George
W. Franzheim and Simon Horkheimer, citizens of
Wheeling, have agreed to furnish the State, without cost
thereto, suitable accommodations in said city for the Leg-
islative, Executive and Judicial departments of the
State, including the State Library, should the seat of

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

government of the State be removed temporarily to said city : and whereas, it appears to the Legislature that the capital of the State should be located at a more accessible and convenient point; therefore," &c. "The preamble cannot restrain the enacting clauses, except when the words are ambiguous, or are not sufficiently large to embrace the case ; or are so large that convenience and the policy of the law clearly require that their generality shall be restrained." Potter's Dwarris on Stat. and Con. 267. "In the modern English cases it is said that the preamble may be read to ascertain and fix the subject matter to which the enacting part is to be applied. So the purview or body of the act may even be restrained by the preamble when no inconsistency results. But it is well settled that where the intention of the legislature is clearly expressed in the purview, the preamble shall not restrain it, although it be of much narrower import." Sedgwick on the Construction of Stat. and Con. Law, 2d ed., Pomeroy's Notes, 43. "But though the preamble cannot control the enacting part of the statute which is expressed in clear and unambiguous terms, yet if any doubt arise on the words of the enacting part, the preamble may be resorted to to explain it." Potter's Dwarris, 269. After the preamble as recited above, comes the body of the act as follows :

"Be it enacted by the Legislature of West Virginia :

"1. That on and after the expiration of ninety days from and after the passage of this act, until hereafter otherwise provided by law, the Seat of Government of the State of West Virginia shall be at the city of Wheeling.

"The Governor is hereby authorized to cause suitable accommodations to be prepared in the city of Wheeling for the several departments of the State Government, including the legislative, executive and judicial departments, and to remove thereto, and cause to be properly placed and arranged, the books, papers and movable property, now in the city of Charleston, belonging to the

several State officers, including the State Library. The said Henry K. List, Michael Reilly, John McLure, George W. Franzheim and Simon Horkheimer agreeing to indemnify the State against the expenses thereby in- curred."

"2. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

We think it unnecessary in this case, to enquire into the character and effect of the agreement of List and others. Whether the agreement recited amounts to a binding contract which could be enforced against List and others in case of non-performance, or whether it was a mere voluntary assurance or agreement, that they would "furnish, &c.," and "indemnify the State, &c.," as a simple donation by them without having the effect of a binding contract on them if the seat of government should be temporarily removed to Wheeling, in our view cannot effect this case, the agreement whatever its character or effect, being a mere recited inducement in the mind of the Legislature to pass the operative enactment itself. The preamble and act recite an agreement of List and others and that agreement of whatever character or effect must be presumed to have been understood by the Legislature, and whether it was such as they ought to have been satisfied with is not a subject of judicial enquiry in this case. The Legislature had the right to give such consideration to and reliance upon the agreement whether legally binding or capable of inforcement, or not, by legal procedure, as they deemed proper. If they chose to rely upon the honor, alone, of List and others, to any extent, they had the right to do so. If they chose to regard the agreement as amounting only to a proposed voluntary donation to the State, without requiring it to be carried with the ordinary form of binding contracts, they had the right to do so. And whether they relied on the agreement in the passage of the act as binding in law or equity on List and others or binding only upon their honor we need not determine in our view

1875.
August Term.

John Slack, Sr.,
and others.
v.
John J. Jacob
and others.

of the case.    The reasonable presumption is that the Legislature estimated the agreement according to its effect. Certainly we are not authorized to presume that they did not do so.    But if we were at liberty to suppose that the Legislature was mistaken as to the character and effect of the agreement of List and others, which may in part have constituted reasons or motives for the enacting clause of the act removing the seat of government to Wheeling until otherwise provided by law, still when the intent and purpose of the enactment is plainly and clearly expressed, and is manifestly unconditional any such mistake cannot invalidate or impair the effect of the act as to such purpose and object.    Were acts of the Legislature subject to be impeached and declared void because the courts might deem the reasons or motives of their enactment mistaken or unsatisfactory, there would be but little certainty as to the validity of statutes upon any subject, and as little security to the rights of property or other things dependent thereon.    But from anything that appears in this cause there is no reason to believe the agreement will not be complied with by List and others or that they have not done so.    For aught that appears the Governor had in his possession and control without cost to the State in proper time all the means necessary to enable him to remove the archives, &c., of the government to Wheeling, &c.    The bill was sworn to on the 20th day of March, 1875, and the order of injunction, made by the circuit judge was made on the 30th day of March, 1875.    It seems that the injunction did not take effect until the 30th of April, 1875 when bond and security were given under the order of injunction.    But it is clear from the face of the act, that the validity and operation thereof, is not as to the removal of the seat of government made dependent or conditional upon the said List and others performing said agreement.    Nor does the act make the performance of said agreement a proviso, exception, condition or saving, so as to operate upon the effect of the act touching the re-

moval of the seat of government to Wheeling, at the time specified in the body of the act. "To introduce in the enacting part an exception, not there to be found, and which, if intended, might have been so easily introduced and expressed, is, we think, to curtail and abridge the meaning of plain words in a manner which no rule of construction warrants." Potter's Dwarris on Statutes, &c., 269. The performance by List and others, of the agreement recited is not made a condition precedent to the operation of the act. But the Legislature, absolutely and certainly, by the act, removed the seat of government to Wheeling until otherwise provided by law—the removal and location to take effect "on and after ninety days from and after the passage of the act." But from the face of the act, preamble and title, there was no agreement that the seat of government should remain or continue at Wheeling longer than the Legislature should deem it proper, and consistent with the public interest and convenience— that the simple meaning and purport of the whole act, in this respect, was, and is; that the Legislature was and should be left free to remove the seat of government from Wheeling to any other point, and at any time after the act took effect. We, however, do not deem it important to the validity of the act that the agreement of List and others should constitute a binding agreement upon them. It is the duty of the Legislature to provide, protect and save the pecuniary as well as other interest, and welfare of the State. The Legislature, reciting in the preamble as they did, that the capital of the State should be located at a more accessible and convenient point than Charleston, and, as we are bound to presume, deeming Wheeling such a point, for temporary location, and also reciting the other matters contained in the preamble, passed the act. We see no prohibition against the right and power of the Legislature to pass the act under such circumstances. Whether it was expedient or good policy for the Legislature to do so, or not, we are not at liberty

<div style="margin">
1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.
</div>

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

to determine. Even though the expectations of the Legislature should be disappointed, as to the means contemplated to be furnished by List and others, or in the procurement thereof, otherwise, for the removal of the archives, &c., of the government, to the city of Wheeling, this would not invalidate the substantive, direct, and independent enactment, removing the seat of government to Wheeling, at the time specified in the act, though it might subject the officers and people of the State to temporary inconvenience and occasion the necessity of additional legislation. The clause removing the seat of government to Wheeling is absolute in its terms and effect, and is in nowise conditional or dependent upon any other recital or provision in the preamble or act. The preamble may be consulted in some cases to ascertain the intention of the Legislature. But it is chiefly from the main body, the purview of the act, that the will of the Legislature is to be learned; and when this is clear and express the preamble will not prevail to contradict it. *Absoluta sententia expositore non indiget.* "This is the case," says Lord Coke, "when the words are plain, without scruple, and absolute without any saving." Sedg. Stat. on Con. Law, 58. The clause at the end of the first section of the act is as follows: "The said Henry K. List, Michael Reilly, John McLure, George W. Franzheim and Simon Horkheimer agreeing to indemnify the State against the expenses thereby incurred," is a mere recital of what these persons did, and is no more a condition precedent, proviso or saving in the connection in which it is found than if it were a part of the preamble only, and is no more a restriction upon the enactment than if it existed in the preamble only.

The Legislature was not content to rely absolutely on the agreement of List and others; but expressly authorized the Governor "to cause suitable accommodations to be prepared in the city of Wheeling for the several departments of the State government, including the

legislative, executive and judicial departments, and to
remove thereto, and cause to be placed and arranged, the
books, papers and movable property, now in the city of
Charleston, belonging to the several State offices, in-
cluding the State library." It may be argued, with much
force, that this conferred on the Governor such power to
contract as is contemplated by that part of section thirty-
eight of article six of the constitution, which is in these
words, viz: "Nor shall any Legislature authorize the
payment of any claim, or part thereof, hereafter created
against the State, under any agreement or contract made,
without express authority of law, and all such unau-
thorized agreements shall be null and void." But
whether it does authorize such contract, or not, it is
not uncommon for persons to supply the needs of the
government or its different departments without con-
tracts, relying on the voluntary justice of the State
to pay reasonably therefor. And such transactions have
been regarded as not within the true meaning of the said
thirty-eighth section, and such voluntary payments have
been made with the approval of all departments of the
government. According to our understanding, that part
of the said thirty-eighth section only applies to claims
based on agreements or contracts made without express
authority of law, and the section declares such unau-
thorized agreements null and void. It does not apply
to claims predicated upon simple justice and right, and
never was intended to prevent the Legislature from vol-
untarily doing justice and right where the claim is not
predicated on a contract made without express authority
of law. An opposite construction, it seems to us, would
be against the spirit and policy of the provision itself, if
not its very letter, and would necessarily operate great
evil and injury in the daily as well as periodical opera-
tions of the government in its different departments;
and would, in fact, necessarily greatly embarrass, if not
completely obstruct, the successful operation of the gov-
ernment, which was not intended by said section. We

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

maturely considered the said provision of said thirtieth section as to its true meaning more than a year ago in the case of *Preston & Shields v. Bennett, Auditor, ante,* and then arrived at the same conclusion in reference thereto as now, and as above declared, but it did not become necessary to the decision of the questions arising in that case to state our conclusion thereon, and therefore it was not then incorporated into the opinion in that case.   We think the principles in Cooley's Con. Lim., side page 178, 179, and 2 Gray (Mass.) 98, 99, relied on in argument by plaintiffs' counsel, do not apply to the question whether the Legislature wisely exercised its judgment as to the truth or effect, in whole or in part, of the facts recited in the preamble and act alleged or supposed to have induced the enactment of the law in question.   Notwithstanding the industry and zeal of the learned counsel for the the plaintiffs, supplemented by our own research, they furnished no authority, and we have found none, authorizing us to look into the preamble or recitals of an act for alleged or supposed fraud, mistakes or errors of judgment in the Legislature upon which to declare the enactment of the Legislature void, or that would justify us in declaring it void for such cause.   The absence of authority on the subject at this late and fruitful day in the history of our jurisprudence, apart from the manifest policy of the subject, is strongly persuasive that no such principle prevails in the law of this country.   And we are of opinion that it would be dangerous, in the extreme, for us to declare such a principle to be law.   But if we, as a court, could, properly, look into the facts which may have influenced the Legislature to pass the act in question, we find nothing *recited* in the preamble, or any part of the act, or otherwise established by the record, which would warrant us in holding that the Legislature was mistaken as to any such facts, or that if they had possessed any more accurate or extensive knowledge upon the subject than they did, such knowledge would have prevented them from enact-

ing the law, or induced them to modify its provisions. It is also argued by counsel of plaintiffs that the act in question is unconstitutional and void, because it shows upon its face that the Legislature was induced to pass it by reason of pecuniary considerations. In considering this question we refer to the recitals and contents of the preamble of the act, which we have already set forth, and consider how far we may inquire into the questions which the argument presents. Both the Constitution and statute substantially prohibit members of the Legislature from taking a bribe, or from receiving, for themselves, any benefit to influence their action as such members. But it is one of the important objects of legislation to receive benefits to the State, and diminish, as far as possible, the burdens of taxation. Courts will not presume fraudulent intent and corrupt purposes in the Legislature, but will presume the contrary. " The motives of a member of the legislature in moving, or of a body of which he is a member, in passing, a legislative act is not a proper subject of inquiry." *Harpending v. Haight*, 39 Cal., 189, 2C2; 30 Cal., 596. In the case of *Lee v. The Bude and Torrington Junction Railway Co.*, L. R. C. P., vol. 6, 582, Judge Willes said: " It was once said—I think in Hobart—that if an act of Parliament were to create a man judge in his own case, the court might disregard it. That *dictum*, however, stands as a warning, rather than an authority, to be followed. We sit here as servants of the Queen and the legislature. Are we to act as regents over what is done by Parliament, with consent of the Queen, Lords and Commons? I deny that such authority exists. If an act of Parliament has been obtained improperly, it is for the legislature to correct it by repealing it; but so long as it exists as law, the courts are bound to obey it. The proceedings here are judicial, not autocratic, which they would be if we could make laws instead of administering them."

"From what examination has been given to this subject, it appears that whether a statute is constitutional or

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

not is always a question of power; that is, whether the legislature, in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. If so, the courts are not at liberty to enquire into the proper exercise of the power in any case. They must assume that legislative discretion has been properly exercised." Cooley's Con. Lim., 186, 187, and authorities there cited in note 1. "And, although it has sometimes been urged at the bar that the courts ought to enquire into the motives of the legislature when fraud and corruption were alleged, and annul their action if the allegation were established —the argument has in no case been acceded to by the judiciary and they have never allowed the enquiry to be entered upon." Same authority page 187. *Mayor, &c., of Balto. v. State ex rel, &c.*, 15 Md. 376; *The Sunbury and Erie Railroad Company v. Cooper*, 33 Penn. St., 278. In this last case, the Judge who delivered the opinion of the court, on page 284, says: "Here, again, and under another aspect, the sincerity and honesty of the legislature, in the performance of their duties, is attempted to be made a question of judicial cognizance; and again we say, that we have no jurisdiction of such a question, and can have no right to express an official opinion in relation to it. Official morality in us requires that we shall not assume authority to judge of the official morality of the legislature. For the faithfulness and honesty of their public acts, we repeat, they are responsible to the public alone, and not by means of a trial before the courts." In the same case, on page 286, the same judge, in speaking for the court, says: "Acts that are not forbidden by the constitution, in form or substance cannot be constitutionally condemned because of the motives which induce them. No human conduct could stand such a test, and no human skill could be trusted to apply it. If we should attempt it here, it might well be asked: 'Who

art thou that judgest another man's servants? To his own master he standeth or falleth.'" *People v. Draper,* 15 N. Y., 545, 555; *Wright v. Defries,* 8 Ind., 302; *Colloch v. State,* 11 Ind., 431; *Railroad Company v. County of Otoe,* 16 Wall., (Sup. Ct. U. S.) 667; *Bridges v. Shallcross,* 6 W. Va. 562—"The legislature may enact any law that is not forbidden by the fundamental law of the land. If the Federal or State Constitution does not in express terms, or by necessary implication, forbid the exercise of such power, the enactment must be adjudged valid and enforcible as a law. *Johnson v. Higgins,* 3 Metc., (Ky.) 566, 567, and also that the judiciary cannot enquire into the motives and necessities which may have superinduced the enactment of the law." In Sedgwick on the Construction of Statutory and Constitutional Law, 2d edition, Pomeroy's Notes, it is said: "There may be, there always will be, questions not only as to the expediency, but the justice, of laws. But questions of public policy and State necessity are not meant to be assigned to the dominion of the courts; and I cannot but think it unfortunate for the real influence of the judiciary that this authority has ever been claimed for them. The right of construction, the right of applying constitutional restrictions, are vast powers which it will always require great sagacity and intelligence to exercise. Let the judiciary rest contented with its acknowledged prerogatives, and not attempt to arrogate an authority so vague and so dangerous as the power to define and declare the doctrines of natural law and abstract right. pp. 155, 156. In the same book, pp. 156 and 157, it is said; "In a case, where it was contended that an act of the legislature of New Jersey was void against natural justice, Mr. Justice Baldwin, of the Supreme Court of the United States used this language: "We cannot declare a legislative act void because it conflicts with our opinion of policy, expediency and justice. We are not the guardians of the rights of the people of the State, unless they are secured by some constitutional provision

1875.
August Term.

John Slack, Sr.,
and others.
v.
John J. Jacob
and others.

1875.
August Term.

John Slack, Sr.,
and others.
v.
John J. Jacob
and others.
which comes within our judicial cognizance. The rem-
edy for unwise or oppressive legislation, within constitu-
tional bounds, is by an appeal to the justice and patriot-
ism of the representatives of the people. If this fail, the
people, in their sovereign capacity, can correct the evil;
but courts cannot assume their rights. There is no par-
amount and supreme law which defines the law of na-
ture, or settles those great principles of legislation which
are said to control State legislatures in the exercise of
the powers conferred on them by the people and the
constitution." *Bennett v. Boggs*, 1 Baldwin, 74 and 75;
*Cochran v. Van. Surley*, 20 Wend, (N. Y.) 381. See
pages 157 and 158 of Sedgwick's work, above cited. In
the same book, the author, on page 158, says: "In a late
case in Pennsylvania, the whole subject was reviewed by
Judge Black, of the supreme court, and he said:

"We are urged to hold that a law, though not pro-
hibited, is said if it violate the spirit of our institutions,
or impairs any of those rights which it is the object of a
free government to protect; and to declare it unconsti-
tutional if it be wrong and unjust. But we cannot do
this. It would be assuming a right to change the Con-
stitution; to supply what we might conceive to be its
defects; to fill up every *casus omissus*; and to interpo-
late into it whatever in our opinion, ought to have been
put there by its framers. The Constitution has given us
a list of things which the Legislature may not do. If
we extend that list, we alter the instrument; we become
ourselves the aggressors, and violate both the letter and
spirit of the organic law as grossly as the Legislature
possibly could. If we can add to the reserved rights of
the people, we can take them away; if we can amend we
can mar; if we can remove the landmarks which we
find established, we can obliterate them; if we can
change the Constitution in any particular, there is noth-
ing but our own will to prevent us from demolishing it
entirely. The great powers given to the legislature are
liable to be abused. But this is inseparable from the

nature of human institutions. The wisdom of man has never conceived of a government with power sufficient to answer its legitimate ends, and at the same time incapable of mischief. No political system can be made so perfect that its rulers will always hold. to the true course. In the very best a great deal must be trusted to those who administer it. In ours the people have given larger powers to the legislature, and relied for the faithful execution of them on the wisdom and honesty of that department and on the direct accountability of the members to their constituents. There is no shadow of reason for supposing that the mere abuse of power was meant to be corrected by the judiciary." *Sharpless v. The Mayor, &c.*, 21 Penn 147, 162. Sedgwick in his said work p. 159 lays down this proposition, "That it is the right and duty of the judiciary to repress and confine the legislative body within the true limits of the law making power ; but that they have no right whatever to set aside, to arrest, or nullify a law passed in relation to a subject within the scope of the legislative authority, on the ground that it conflicts with their notions of natural right, abstract justice or sound morality ;" *Wade v. The City of Richmond*, 18 Gratt. 183.

From the foregoing authorities it appears that we have no authority to inquire into or set aside an act of the Legislature for alleged fraud on the part of the Legislature or because we might think the act, in whole, or in part, impolitic or contrary to good morals or public policy. But we are bound to consider in this case that the agreement recited in the preamble and act was recognized by the Legislature for the good of the State, and as tending to lighten the burdens of the people and not as being *mala fides*. They declare in the preamble that it appears to the Legislature that the capital of the State should be located at a more convenient or accessible point and in effect also declared that Wheeling, in their opinion, was that point for temporary location. And we are not at liberty to attribute to the Legislature other than proper

1875.
August Term.

John Slack, Sr.,
and others.
v.
John J. Jacob
and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

motives and purposes as to said agreement. We are fully authorized to presume that the said recited agreement was recognized by the Legislature only for proper and legitimate purposes of State, and not for corrupt and improper purposes.

It is argued by plaintiffs' counsel that the sixth article of the Constitution provides, "that the seat of government shall be at Charleston, until otherwise provided by law," and that this section contemplates that the seat of government shall remain at Charleston until it is permanently located elsewhere, by law, and that a temporary removal from Charleston to any other point is not contemplated or within the scope or authority conferred by the section. The effect of the argument, as it seems to us, is, substantially, that under this section there can be but one removal and location of the seat of government, and when that is effected, the power of the Legislature upon the subject is exhausted, no matter how great the public convenience and necessities that might require another removal. We cannot give our assent to this position. It seems to us from the plain reading of the section that it was not intended to be restrictive upon the Legislature in any respect, but to give to the Legislature full power and control over the seat of government so that they might remove it at any time from Charleston, or any other place, at which it might be located by law.

Leaving out the word "permanent" in this section, which was employed in the section of the former Constitution, upon this subject, was manifestly intended to avoid all possible ground for controversy as to the right and authority of the Legislature to remove the seat of government at any time and to any place.

It is further argued and insisted, by the counsel for the plaintiffs, that the said act is unconstitutional and void because the title of the act does express the object of the act, according to the true intent and meaning of the thirtieth section of the sixth article of the Constitu-

tion of this State. That part of said thirtieth section which is applicable and relevant to this question is in these words: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof as shall not be so expressed." The supreme court of Louisiana, speaking of the former practice said: "The title of an act often afforded no clue to its contents. Important general principles were found placed in acts, private or local, in their operation; provisions concerning matters of practice or judicial proceedings were sometimes included in the same statute with matters entirely foreign to them, the result of which was that on many important subjects the statute law had become almost unintelligible, as they whose duty it has been to examine or act under it can well testify. To prevent any further accumulation to this chaotic mass was the object of the constitutional provision under consideration." *Walker v. Caldwell*, 4 La., An., 298; Cooley's Con. Lim., 3rd ed., top page, 142. The supreme court of Michigan say: "The history and purposes of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine, in their favor, the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the State. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dextrous management, clauses were inserted in bills of which the title gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. There was no design by this clause to embarrass legislation

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

81

by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number &c." *People v. Mahaney.* 13 Mich. 494; Cooley on Con. Lim. 142. The supreme court of Iowa say : "The intent of this provision of the Constitution was to prevent the union, in the same act, of incongruous matters, and of objects having no connection, or relation. And with this was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill where the title expressed another." *State v. County Judge, of Davis Co.* 2 Iowa, 282 ; Cooley on Con. Lim. 143. Judge Cooley top page 143 of his work says, "the general purpose of these provisions is accomplished when a law has but one general object which is fairly indicated by its title. To require every end and means necessary, or convenient, for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. It has, accordingly, been held that the title of 'an act to establish a police government for the city of Detroit,' was not objectionable for its generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support, and courts for the examination and trial of offenders, might, constitutionally, be included in the bill under this general title. Under any different ruling it was said, "the police government of a city could not be organized without a distinct act for each specific duty to be devolved upon it, and these could not be passed until a multitude of other statutes had taken the same duties from other officers before performing them. And these several statutes, fragmentary as they must necessarily be, would often fail of the intended object, from the inherent difficulties in expressing the legislative will thus restricted to such narrow bounds. *People v. Mahaney,* 13 Mich. 495. The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation, incongruous in itself,

*1875.*
*August Term.*

John Slack, Sr., and others,
v.
John J. Jacob and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

and which, by no fair intendment, can be considered as having a necessary or proper connection." Cooley's Con. Lim. top page 145 further says: "The repeal of a statute, on a given subject, it is *held*, is properly connected with the subject matter of a new statute on the same subject; and, therefore, a repealing section in the new statute is valid, notwithstanding the title is silent on that subject. So an act to incorporate a railroad company, it has been *held*, may authorize counties to subscribe to its stock, or otherwise aid in the construction of the road. So an act to incorporate the Fireman's Benevolent Association, may lawfully include under its title, provisions for levying a tax upon the income of foreign insurance companies, at the place of its location, for the benefit of the corporation. So an act to provide a homestead for widows and children was held valid, though what it provided for was the pecuniary means sufficient to purchase a homestead. So an act 'to regulate proceedings in the county court,' was held to properly embrace a provision giving an appeal to the district court, and regulating the proceedings therein on the appeal. So an act entitled 'an act for the more uniform doing of township business' may properly provide for the organization of townships. So it is held that the changing the boundaries of existing counties, is a matter properly connected with the subject of forming new counties out of those existing. So a provision for the organization and sitting of courts in new counties is properly connected with the subject of the formation of such counties, and may be included in 'an act to authorize the formation of new counties and to change county boundaries.'" Many other cases which have been adjudicated on this subject are cited in Cooley's Con. Lim. 3d ed. 166, 167.

" There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction where strictness is unnecessary to the accomplishment of the beneficial pur-

poses for which it has been adopted." Cooley's Con. Lim., top page 146. It has been said to be improper to give this provision "too rigorous and technical a construction." "If, in applying it, we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the legislature, without fulfilling the intention of the framers of the Constitution." Sedg. on Const. and Stat. Law, 2d ed.; Pomeroy's notes 520, 521, 522. This Court had this section of the Constitution under consideration in the case of *Shields and Preston v. Bennett, Auditor, ante.* And in that case the Court held, as stated in the syllabus, that " the most liberal construction favorable to the validity of legislation which the language of the provisions admits should be adopted. When the principal object of an act is expressed in the title, and the act embraces with such principal object other auxiliary objects, the act, if not otherwise objectionable, is valid, not only as to the principal, but likewise as to the auxiliary objects. Generally, the language of a title should be construed in its most comprehensive sense."

Section thirty-seven of article two of the constitution of Kentucky declares that " no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." In the case of *Johnson v. Higgins*, 3 Metc. (Ky.) 566, 567, it was *held* by the supreme court of appeals of Kentucky that " no provision of a statute relating directly or indirectly to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of section thirty-seven of article two of the constitution of Kentucky. The section should receive a reasonable, and not a technical construction." *In the matter of Petition of Ferdinand Mayer*, 50 N. Y., 504, it was *held* by the court of appeals of New York that " if the title of an act fairly and reasonably announces the subject, and that a single one, and if the various parts thereof have respect, or relate, to

that subject, the provision of the constitution that no local or private bill shall embrace more than one subject, and that shall be expressed in its title, (state constitution, article three, section 16,) is complied with. The degree of relationship of each provision is not material if it legitimately tends to the accomplishment of the general purpose." In the case of *The People ex rel. The City of Rochester v. Martin Briggs,* 50 N. Y., 553, it was *held* that "every presumption is in favor of the validity of legislative acts, and they are to be upheld, unless there is a substantial departure from the organic law. In order to comply with that provision of the constitution which declares that no local or private bill which may be passed shall embrace more than one subject, and that shall be expressed in the title, (State Con., article three, section sixteen,) it is not requisite that the most expressive title shall be adopted, nor will courts criticise too rigidly the details of a bill to find extraneous matter. The degree of particularity with which the title of an act is to express its subject rests in the discretion of the Legislature. When the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it and all measures which may facilitate its accomplishment, are proper to be incorporated into the act, and are germaine to the title." In the last named case, the court cites, in its opinion, the case in 2 Metc. (Ky.,) 219, in which it was *held* that in the act entitled, "An act to amend the charter of the Cincinnati and Covington Bridge Co.," a provision that the bridge company might sell, and the city of Covington might subscribe for $100,000 of the stock, and sell the bonds to the city, and levy a tax to pay them, was valid. The court said: "None of the provisions of a statute should be regarded as unconstitutional, when they relate directly or indirectly to the same subject expressed in the title. * * * The power to sell the stock of the city of Covington requires that a power should be conferred on the latter to subscribe and pay for it, for

*1875.*
*August Term.*

John Slack, Sr.,
and others,
v.
John J. Jacob.
and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

without such a power, the power to sell would be nugatory. The subject is the same." In the case of *O'Lary v. Cook Co.*, 28 Ill., 534, under an act entitled "An act to incorporate the North-western University," it was held that a clause in the act incorporating the college, prohibiting the sale of ardent spirits within a distance of four miles, was so germaine to the primary object of the charter as to be properly included within it." See the case referred to in 50 N. Y., 564, and 3d ed. of Cooley on Con. Lim., 147. In the case of *Blood v. Mercelliot*, 53 Pa. St. 391, it was *held* by the Supreme Court of Pennsylvania, that under the title of an act entitled "An act to increase the boundaries of Forest county," provisions for the location for the county seat, and procuring donations for erecting county buildings, were connected with the subject expressed in the title." This case is also cited in 50 N. Y., 564 and 565. The constitution of Pennsylvania, under which the above decision was made, declares that "No bill shall be passed by the legislature containing more than one object, which shall be clearly expressed in the title, except appropriation bills." See case of *Thomasson v. The State*, 15 Ind., 455, and *Chiles v. Drake*, 2 Metc., (Ky.,) 150, cited in the case in 53 Pa. St. In the case of *Parkinson v. The State of Maryland*, 14 Md., 185, it was *held* by the court of appeals of that State, that, "The fact that *giving* is made an offense in the body of the act, whilst the *title* prohibits the *sale* does not render the act unconstitutional under section seventeen, of article three of the constitution, which provides that ' every law enacted by the legislature shall embrace but *one subject*, and that shall be *described in the title*.' " In the case of *Inkster v. Carver*, 16 Mich., 488, the supreme court of Michigan, of which Cooley, Ch. J., was one, in its opinion, says: "The act approved March 15, 1867, is claimed to be in conflict with that provision of the constitution which declares that no law shall embrace more than one object, which shall be expressed in its title. Before the court will declare the

act invalid, as opposed to the constitution, the repug-
nancy of the law to the constitution must be manifest;
and if the conflict is supposed to arise from any peculiar
interpretation of the act, the law should be sustained
and such interpretation overruled, unless the particular
interpretation is imperatively required." In the case of
*Mills v. Charleton*, 29 Wis., 400, 9 Am. Rep. 578, Dixon,
C. J., in delivering the opinion of the court, declares
that "it is the general subject of the act, of which the
constitution speaks," and also that "The court
is not to set aside or declare an act void be-
cause the subject was not as fully, or as une-
quivocally expressed as it might otherwise have been.
A liberal rule of interpretation must prevail in this re-
spect, not only for the reason just stated, but because the
proposition is to strike down and defeat the act of the
Legislature, which can never be done upon slight or un-
tenable grounds. It is a truth which has been often as-
serted and often acted upon by the courts, that to justify
the annulling of a statute by judicial sentence the viola-
tion of the Constitution must be clear and unmistakable."
See in 9 Am. Rep. 582, 583. See also *City of St. Louis
v. Henry Tiefel*, 42 Mo. 578. In the last named case it
was held by the supreme court of Missouri that, "The
intention of the thirty-second section of article four of
the constitution of that state which declares that no law
enacted by the general assembly shall relate to more than
one subject, and that shall be expressed in the title ; but
if any subject embraced in the act be not expressed in
the title, such act shall be void only as to so much there-
of as is not so expressed," was to prevent surprise or fraud
upon the members of the Legislature by means often re-
sorted to in the provisions of bills, of inserting matters
of which the title gave no intimation ; and also to stop
the vicious and corruptive system of "log-rolling," and to
prevent the conjoining in the same act of incongruous
matters and of subjects having no legitimate connection
or relation to each other ; and if the title of an original

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

act is sufficient to embrace the provisions contained in an amendatory act, it will be good, and it need not be enquired whether the title of the amendatory act would of itself be sufficient. It is plain however, that the use of the words "other purposes" which have been extensively used in the title to acts to cover any and every thing whether connected with the main question indicated by the title or not, can no longer be of any avail." It will be observed that there is very great similarity between the section of the Missouri constitution and the section of our Constitution under consideration. Perhaps it may be safely said that in substance there is no material difference.

It appears to us from the authorities above quoted and cited that in considering whether an act of the Legislature is repugnant to the said thirtieth section of the sixth article of our State Constitution the said section must be construed liberally in favor of the act—that it is the duty of the court in considering whether the object of the act is expressed in the title to lean in favor of sustaining the validity of the act, and to declare its validity unless its unconstitutionality is established and made manifest and clear beyond all reasonable doubt. It is the general object of the act of which this section of the Constitution speaks. If this section of the Constitution were to receive from the courts a strict technical construction it is manifest that enormous evil and injury would result—Many of the most important acts of legislation—acts involving rights of property, &c., would be stricken down by the courts. The enormous evils that would result from such a construction would far overbalance any good to be derived therefrom. A most liberal construction of the section in favor of acts of the Legislature will secure the general object and purpose of the section and any other construction would be disasterous in the extreme. As we have seen in the statement of this case section twenty-two, article four of the Constitution of this State of 1863, provided that the

seat of government shall be at the city of Wheeling, until a permanent seat of government be established by law." It is a part of the history of the state that the seat of government did remain at the city of Wheeling until it was removed therefrom by virtue of the provisions of an act of the Legislature, passed February 26, 1869, chapter seventy-three, entitled "An act permanently locating the seat of government for this State." This act provided, in its first section, that the permanent seat of government for this State is hereby located at the town of Charleston, in the county of Kanawha. The act took effect on the 1st day of April, 1870. The Constitution of the State of 1872, in the twentieth section of article six, provides that "the seat of government shall be at Charleston until other-wise provided by law." It will be observed that the word *temporarily* is employed in the title of the act of February 20, 1875, in the same connection except as to place as the word *permanent* is employed in the title of the act permanently locating the seat of government. The title of the act is "An act to remove the seat of government temporarily to Wheeling." The preamble to the act is: "Whereas, Henry K. List, Michael Reilly, John McLure, George W. Franzheim and Simon Hork-heimer, citizens of Wheeling, have agreed to furnish the State, without cost thereto, suitable accommodations in said city for the Legislative, Executive and Judicial departments of the State, including the State Library, should the seat of government of the State, be removed temporarily to said city;" and "whereas, it appears to the Legislature that the Capital of the State should be located at a more accessible point: therefore," (then follows the enacting clause,) "Be it enacted by the Legislature of West Virginia: 1. That on and after the expiration of ninety days from and after the passage of this act, until hereafter otherwise provided by law, the seat of government of the State of West Virginia shall be at the city of Wheeling," &c. We think the word *tem-*

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

82

1875.
August Term.

John Slack, Sr.,
and others.
v.
John J. Jacob
and others.

*porarily*, under the rules we have quoted in relation to construing the words of a statute, was used and employed in the title of the act, in its most familiar signification and import, or natural and ordinary meaning, and in contradistinction to permanent or any definite period of time, and not in a technical sense.

Statute laws are written to be understood by the people of the state for whose government they are enacted. And generally, in interpreting the language employed in an act of the Legislature, the language employed, as we have seen, should be construed according to its ordinary meaning. If we turn to the dictionaries we find that Noah Webster, in the unabridged edition of that work of 1855, the latest to which we now have access, defines the word temporary thus: " Lasting for a time only ; existing or continuing for a limited time:—as, the patient has obtained temporary relief—there is a temporary cessation of hostilities—there is a temporary supply of provisions. In times of great danger Rome appointed a temporary dictator." These are all the definitions and illustrations of the word given by Webster. Dr. Worcester, in the edition of his work of 1870, defines the word temporary substantially the same, thus: " Lasting for a limited time; not of long duration; only for a limited time ; transitory." It will be observed that nearly all these are separate definitions, and nearly all of them clearly indicate an undefined period of time. If a physician says " the patient has obtained temporary relief," he means that the patient has obtained such relief for an undefined time, which may be determined by a future uncertain contingency. So when a general speaks of a " temporary cessation of hostilities," though in some cases the time may be prescribed, in others it is often indefinite. These definitions and examples of the word " temporary," and its use, correspond with our common understanding of the subject. If a man says he removes to Wheeling " temporarily," or locates at Wheeling " temporarily," he generally means that he removes or

1875.
August Term.

John Slack, Sr ,
and others,
v.
John J. Jacob
and others.

locates there for an indefinite time, which he expects not to be permanent, but to be determined by some future contingency or event.

In the constitution of Maryland there was a provision to this effect. "And the mayor and city council may provide, by ordinance, from time to time for the creation and government of such temporary additional police, as they may deem necessary to preserve the public peace," and the court of appeals of Maryland in determining as to this provision say: "Now it is manifest, the power given to the mayor or city council is to *create* and govern a *temporary additional* police, and not a permanent police, as contradistinguished from it. Moreover, the police which they are authorized to create, is not only *temporary* in its duration, but is to be *additional* to something already in existence, whenever from time to time, it may be necessary to summon it *"to preserve the peace."* * * * "The very language employed clearly denotes, that the thing to be created was to be one of activity,. of short duration; and which, after having accomplished the purpose of its enrollment, was to be disbanded into the general body of the community from which it was taken for the preservation 'of the peace' suddenly threatened to be, or actually disturbed." *Mayor, &c., of Balto. v. State ex rel. &c.,* 15 Md. 481.

So in the title of the act of the Legislature in question it seems to us that "the removal of the seat of government temporarily to Wheeling" means simply, that the Legislature and List and others understood and contemplated that the removal of the seat of government to Wheeling should be for a time perhaps "not of long duration" and at any rate not permanently. The word "temporarily" as used in the preamble of the act in connection with the other parts of the preamble with which it is used means the same thing.

And it seems to us the language in the enacting clause that "on and after the expiration of ninety days

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

from and after the passage of this act, until otherwise provided by law, the seat of government of the State of West Virginia shall be at the city of Wheeling" conveys the same idea. If the word "temporarily" had been inserted in the enacting clause in lieu of the words "until otherwise provided by law," the object of the enacting clause would not have been more clearly expressed than as the clause stands in the act. Each phrase indicates the idea that a permanent location is not contemplated; and the act, at the same time, recognizes the constitutional principle that the location not definitely limited will continue until otherwise determined by legislation; and is subject to removal from Wheeling at any time the Legislature may choose so to enact.

It was urged in argument by the counsel for the plaintiffs that the title to the act might deceive and mislead members of the Legislature and was well calculated so to do. But we fail to see the force of the argument. If the title to the act had said that the removal or location was for a specified period—as for ten years or any other certain period of time, while in fact the act in effect made the location permanent so far as the Legislature had the power to do so—that is to continue until the Legislature should otherwise enact, this might have deceived members of the Legislature who were so careless as to vote on the title without reading or hearing the act read.

Again, if the act in question in the enacting clause had fixed the period of the location in Wheeling at fifty years, or any other limited time, careless members would as likely have been deceived and misled by as the language of the act as it reads and was passed. And we understand counsel for plaintiffs to argue that if the time the seat of government should remain at Wheeling had been definitely fixed at a specified term of years, then the act as to time would have been unexceptionable. But the title to the act fixes no specific time to which the location at Wheeling is limited, but indicates that it was not intended to be per-

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

manent, and left it to the members of the legislature, as in other cases of general titles, to examine the bill or hear it read, for its details and provisions. Upon personal examination of the bill or hearing it read the members, would have readily found that both in the preamble and enacting clause of the bill, the removal and location was not expected to be permanent, but was for a time contemplated to be determined or ended by future legislation at the will of the Legislature. It is true that such legislation might never be had; but such was not the expectation indicated by the title, preamble or enacting clause.

It is not improbable that owing to past alleged misunderstandings and contentions connected with the subject of the seat of government of this State, and its removal growing, in part, out of matters alleged in the forepart of plaintiff's bill, the Legislature thought it proper to insert in the bill provisions clearly indicating that the removal of the seat of government to Wheeling should not be made by the act otherwise than to be subject to removal and re-location again by the Legislature when public convenience, interest or necessity might, in the opinion of the Legislature, so require, as contemplated by the Constitution, so that no expectations could be created by the act in question in this case, which might be disappointed should removal or re-location be provided for by future act. Upon consideration of the whole subject, it seems to us that the object of the act is sufficiently expressed in the title thereto. The Legislature, by the passage of the act, affirmed its constitutionality. Legislators, before entering upon the performance of their duties as such, are sworn to support the Constitution of the State. And it must be presumed that in passing the act they affirmed its constitutionality under the solemn and binding obligation of their oaths. The Governor, the chief of the executive department of the State, has also, by his public act under his oath, to support the Constitution of the State, pronounced in favor of

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

the constitutionality of the act. Thus the Legislature and Chief Excutive of the State have affirmed the constitutionality of the act. While these facts are proper for our respectful consideration, still they are not conclusive and binding upon us. It is our duty to pronounce our own solemn conviction as to the constitutionality of the act. And in the performance of that duty, after anxious deliberation upon the question we declare that in our opinion the said act of the Legislature, entitled "An act to remove the seat of government temporarily to Wheeling," and passed on the 20th day of February, 1875, is constitutional and valid.

It is, however, insisted by the defendants in argument before us that the bill does not on its face show sufficient matter to give a court of equity jurisdiction of the matters and things therein alleged and to grant the relief prayed in the bill; that in fact a court of equity has no jurisdiction or authority to enjoin and restrain the Governor from the execution of said act of the Legislature until the question of the constitutionality of the act should be adjudicated and settled by such court; that the court in so doing invaded the constitutional prerogatives of the Executive department in violation of the Constitution, and arrogated, to itself a jurisdiction and power which it does not possess under the Constitution and laws. The defendants claim that in this case the duty prescribed by the act is only ministerial, and that, in such case, the court has jurisdiction and authority to enjoin and prohibit the Governor from executing the act until the court finally determined and passed on the constitutionality thereof. This presents a grave and important question for our consideration and determination. But the plaintiffs' counsel argued that we could not now consider this question of jurisdiction; that the bill was not demurred to or objection taken to the jurisdiction in the court below by plea or answer and that, that question cannot now be considered by this Court. But we think upon the authority of the cases of *Hudson v. Kline,*

9 Gratt. 379; *Armstrong's Admr. v. Pitt*, 13 Gratt. 243; Jones v. Bradshaw, 16 Gratt. 355, and *Green & Suttle v. Massie*, 21 Gratt. 356, that the plaintiffs' objection is not well taken. In the last named case it was expressly held that "If at the hearing of a cause, the case made upon the pleadings and proofs, is one of which a court of equity has no jurisdiction, the bill should be dismissed; though the defendant has made no objection to the jurisdiction, either by demurrer, plea or answer, but has defended himself on the merits. And in such a case an appellate court will reverse a decree in favor of the plaintiff and dismiss the bill though no objection to the jurisdiction was taken in the court below."

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

We proceed now to the consideration of the question of jurisdiction of a court of equity in this case as made by the defendant's counsel as aforesaid. In order to arrive at a correct conclusion upon this question it is necessary to ascertain first what are the provisions of the Constitution of this State touching the different departments of the government, and especially as to the Executive and Judicial departments. Article five of the Constitution, which has but one section, provides that the Legislative, Executive and Judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

The first section of the sixth article of the Constitution provides that "the legislative power shall be vested in a Senate and House of Delegates."

The first section of the seventh article of the Constitution provides that "the Executive department shall consist of a Governor, Secretary of State, State Superintendent of Free Schools, Auditor, Treasurer and Attorney General, who shall be *ex-officio* reporter of the Court of Appeals. * * They shall, except the attorney General, reside at the seat of government during

1873.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

their terms of office, and keep there the public records, books and papers, pertaining to their respective offices, and shall perform such duties as may be prescribed by law."

The fifth section of same article declares that "the chief executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed."

Section twelve declares that "the Governor shall be commander in chief of the military forces of the State (except when they shall be called into the service of the United States) and may call out the same to execute the laws, suppress insurrection and repel invasion." Power is also given him to grant reprieves and pardons after conviction. Power is also given him to convene the Legislature on extraordinary occasions. He is also granted a qualified veto power. A number of other important powers and duties are bestowed upon the Governor by the Constitution which it is now unnecessary to specify.

The eighth article of the Constitution, first section declares that the judicial power shall be vested in a supreme court of appeals, and circuit courts, and the judges thereof; in county and corporation courts, and in justices of the peace.

The third section of the same article declares that the Supreme Court of Appeals shall have original jurisdiction in cases of *habeas corpus, mandamus,* and *prohibition.* It is granted appellate jurisdiction in civil cases, where the matters in controversy, exclusive of costs, is of greater value than $100 and in *mandamus* and a number of other cases, civil and criminal, not necessary to name.

The twelfth section of said article declares, among other things, that "the circuit courts, except in cases confided by this Constitution exclusively to some other tribunal, shall have original and general jurisdiction of all matters at law, where the amount in controversy, ex-

clusive of interest, exceeds $50 * * and in all cases in equity," and also *mandamus* and various other cases, civil and criminal, and appellate jurisdiction therein specified.

The twenty-seventh section of same article confers upon the county court, which is composed of a president and ordinarily of two justices of the peace, among other things, original jurisdiction in cases of *mandamus*; *and in all suits in equity.*

Upon the passage of the act under consideration, it became the duty of the Governor, as the chief executive under the constitution, to determine for himself where the seat of government was, on and after the passage of the act. It was his duty to do so, in fidelity to his oath of office to support the constitution of the State; and the constitution of the State unequivocally requires that he shall reside at the seat of government during his term of office, and keep there the public records of his office, and commands him, as the chief executive officer, in whom is vested the chief executive power, to "take care that the laws be faithfully executed." In order to determine his constitutional duty in this respect he must of necessity exercise his discretion and best judgment. How else could he perform this constitutional duty except by passing upon the question as to whether the act of the Legislature was constitutional and valid, or unconstitutional and void? When he determined in his mind and conscience that the law was constitutional, it then devolved on him to execute it—the power and duty in this case being, in our opinion, clearly executive, requiring the exercise of discretion and judgment, on his part. In the case of the *State of Mississippi v. Johnson, President,* Chief-Justice Chase, in delivering the opinion of the Supreme Court of the United States, says: "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite

83

*1875.*
*August Term.*

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

duty, arising under conditions admitted or proved to exist, and imposed by law." 4 Wall., 498. The Judge further says: "In ministerial duties, strictly speaking, there is nothing left to discretion—no room for the exercise of judgment." The powers and duties springing from said act and the constitution and devolved upon the Governor, being executive, the injunction was improvidently granted, and the circuit court of the county of Kanawha could not properly enjoin the removal of the archives of the State and the State library from the city of Charleston to Wheeling, until the court passed upon the constitutionality of the act, notwithstanding the allegations in the bill that the act was unconstitutional. The case of the *State of Mississippi v. Johnson*, above cited, was a motion made, before the Supreme Court of the U. S., in behalf of the State of Mississippi, for leave to file a bill in the name of the State praying the Court perpetually to enjoin and restrain Andrew Johnson, President of the United States, and E. O. C. Ord., general commanding in the district of Mississippi and Arkansas, from executing, or in any manner carrying into effect certain acts of Congress, known as reconstruction acts, of March 2d and 23d. 1867, upon the alleged ground that said acts of Congress were unconstitutional. The Court refused to allow the bill to be filed, and Judge Chase, on page 499, in delivering the opinion of the Court, says: "The duty thus imposed on the President is in no just sense ministerial—it is purely executive and political. An attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized in the language of Chief-Justice Marshall, as 'an absurd and excessive extravagance.' It is true that in the instance before us the interposition of the court is not sought to enforce action by the executive under constitutional legislation, but to restrain such action under legislation alleged to be unconstitutional. But we are unable to perceive that this circum-

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

stance takes the case out of the general principles, which forbid judicial interference with the exercise of Executive discretion. It was admitted in the argument that the application now made to us is without a precedent; and this is of much weight against it. Had it been supposed at the bar that this Court would, in any case, interfere by injunction to prevent the execution of an unconstitutional act of Congress, it can hardly be doubted that applications with that object would have been heretofore addressed to it. The fact that no such application was ever before made in any case indicates the general judgment of the profession that no such application should be entertained. The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are in proper cases, subject to its cognizance. The impropriety of such interference will be clearly seen." No case has been cited by counsel, that we now recollect, where a court of any State in the Union has ever granted an injunction enjoining the Governor of a State from the performance of any executive, or even alleged, ministerial duty. In *Sutherland v. The Governor*, 29 Mich., 327, 328, Judge Cooley says, in delivering the opinion of the court: " For it cannot be claimed, when federal and state governments have been formed, so far as distribution of power is concerned on the same general plan, that the executive of the Union can claim immunity from judicial process any more than the Governor of one of the States." The relations of the Executive, Legislative and Judicial departments of the government of this State bear, so far as we are advised, generally similar relations to each other as the same departments of the government of the United States bear toward each other. The Constitution of this State, as we have seen, expressly declares that these departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person

1875.
August Term.

John Slack, Sr., and others,
v.
John J. Jacob and others.

exercise the powers of more than one of them at the same time, except that justices of the peace may be elected to the Legislature. None pretend that the courts can either enjoin the Legislature by injunction from passing any act in its legislative capacity which is forbidden by the Constitution, nor compel them to enact any law which is required by the Constitution to be enacted. Each member is required to take the oath prescribed by the Constitution; and if he fails to discharge his duty—if he proves faithless to the Constitution—he is answerable therefor generally to his constituents alone. It is true, if the Legislature enact any law that is expressly prohibited by the Constitution, in violation of such prohibition, it is made the duty of the courts by the twenty-first section of the eighth article of the Constitution, upon a proper case presented before them, to declare such act null and void. This section makes but little, if any, difference in what was the duty of the courts before it was inserted in the Constitution, in the character of cases to which it applies, and was not intended to enlarge the jurisdiction of the courts so as to authorize them to invade and absolutely control and subject the Chief Executive in the exercise of his most important executive duties to its jurisdiction and control, especially in such a case as that now before us. "Proper case," as employed in the Constitution, means a case in which the courts have jurisdiction of the subject matter and the parties, for the purposes of the case, in whole or in part. But in the case at bar the circuit court did not have power, under the Constitution, to enjoin and restrain the Governor or other officer or officers, or person or persons, acting under the authority or direction of the Governor, for the purposes and objects of the bill according to the principles decided in the case in 4 Wallace before cited. It is true that the bill attempts to proceed against John J. Jacob in his private capacity, and it alleges that all the powers and duties supposed to be conferred and imposed

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

upon John J. Jacob by the said act, who is named therein as Governor, are ministerial powers and duties and do not involve the exercise of any executive discretion, and that they are not acts, powers or duties conferred upon the Governor by the Constitution; and that all such powers and duties could as well have been conferred upon any other person or persons. And the injunction enjoins, restrains and inhibits—"His Excellency John J. Jacob, Governor, &c." "But it has been suggested" (says Chief Justice Chase in the case in 4 Wallace,) "that the bill contains a prayer that if the relief sought cannot be had against Andrew Johnson, as President it may be granted against Andrew Johnson of Tennessee. But it is plain that relief as against the execution of an act of Congress by Andrew Johnson is relief against its execution as President. A bill praying an injunction against the execution of an act of Congress by the incumbent of the Presidential office cannot be received, whether it describes him as president or as a citizen of a State." This principle applies to this case. It is essentially necessary and proper that each department of the government shall be careful in its action to keep within its legal and constitutional sphere, and not attempt to exercise powers and duties which under the constitutional appointment of powers belongs to the other, or improperly interfere with the exercise of the rights as well as duties of the others. Unless this is done the departments must come in hostile contact and collision and the public interest be made to suffer greatly and the public peace be imperilled, if not, broken by the shedding of blood. We had hoped to be able in this case to lay down some general rule as to how far, if at all, the judicial department of the government could interfere with the chief Executive of the State in the exercise of any of the duties and powers conferred upon him by the Constitution and the laws by process of injunction or mandamus. But upon earnest and anxious consultation we have not been able to agree definitely upon such rule

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

or line of division. Consequently we have determined it to be most advisable to leave the general subject on account of its transcendent importance for determination upon some occasion, should one arise, when there shall be a full bench. But while this is so we have determined the question of jurisdiction in the case at law. Upon the general subject of jurisdiction of the State courts over the chief Executive a number of authorities have been cited by counsel, and others we have also discovered but they are cases of *mandamus*. We state the cases: *Cotten v. Ellis*, 7 Jones N. C. 545; *Tenn & Coosa R. R. Co. v. Moore*, 36 Ala. 371; *Pacific Railroad v. Governor*, 23 Mo. 353; *Bower v. State, ex. rel.* 7 Ga. 473; *Chamberlain v. Sibley, Gov.*, 4 Minn. 309; *McCauley v. Brooke, Controller of State*, 16 Cal. 11; *Middleton v. Lowe, Gov.*, 30 Cal. 596; *Stuart v. Haight, Gov.*, 39 Cal. 87; *Harpending v. Haight, Gov.*, 39 Cal. 189; *State of Ohio ex. rel. Whiteman v. Chase, Gov.*, 5 Ohio St. 528; *State of Ohio ex rel. Maffit v. Chase, Gov.*, 7 Ohio St. 372; *Magruder v. Swann*, 25 Md. 173; *Hawkins v. The Governor*, 1 Pike (Ark.) 570; *The People v. Bissell*, 19 Ill. 229; *Dennett, Petioner*, 32 Maine 508; *The State v. The Governor*, 1 Dutcher, (N. J.) 331; *The State ex rel. Oliver v. Warmoth*, 22 La. An 1; 2 Am. Rep. 712, S. C. *The State ex rel. Mississippi Co. v. Warmoth*, 24 La. 351, 13 Am. Rep. 126, S. C.; *the State ex rel Bartley v. Gov.*, 39 Mo., 388; *Houston &c. v. Randolph*, 24 Texas, 317; *Mauran v. Smith*, 8 R. I., 192; 5 Am. Rep, 564; 5 Am. Law Reg. (N. S.) 630, S. C.; *People v. Yates*, 40 Ill. 126; *Bledsoe v. International Railroad Co*, 40 Texas, 537; *Lowe v. Towns*, 8 Ga., 360; Am. Rep., 128, note; *The People on relation of John L. Sutherland v. Governor*, 29 Mich., 320. As bearing on the subject, the following authorities have also been cited: 1 Peters Rep., 267; *Marbury v. Madison*, 1 Cranch, 137; *Kendall v. United States*, 12 Peters, 324; *Decatur v. Paulding*, 14 Peters, 606; *State of Mississippi v. Johnson, President*, 4 Wall., 475; Moses on Mandamus, 82; High on Extraordinary Remedies, sections 119, 120, *et*

*seq; Osburn v. The Bank of the United States*, 9 Wheaton, 738; *Davis v. Gray*, 16 Wall., 203; *State of Georgia v. Stanton*, 6 Wall., 50.

The case in 9 Wheaton, 738, was an injunction in the circuit court of the United States against the auditor and treasurer of the State of Ohio.

The case in 16 Wallace, 203, was an injunction sued out of the circuit court of the United States against the Governor of Texas.

The two last named cases are different from the case at bar. The courts from which the injunction issued were United States courts and not State courts. Whether these courts have and may exercise power and authority over the executive and other executive officer of the several States in any case which the State courts may not exercise such power and authority, we are not called on to determine. It will be found on examination of the numerous authorities above cited that there is a wide difference and great conflict in the decisions and authorities on the jurisdiction and authority of the State courts to compel the chief executive to perform duties whether declared by the constitution or required by law.

In the case in 29 Mich., 320, Judge Cooley delivered the opinion of the court, and judges Campbell and Christiancy concurred. Graves, Ch. J., did not sit. But in this case, the latest we have seen, and decided at April term, 1874, it was decided on an application for a rule for mandamus against the Governor of Michigan after argument by counsel for and against the application, that "when a duty is devolved upon the executive of the State, rather than upon an inferior officer, it will be presumed to have been done because his superior judgment, discretion and sense of responsibility were confided in for a more accurate, faithful and discreet performance than could be relied upon if the duty were put upon an officer chosen for inferior duties; and such a duty can seldom be considered as merely ministerial. "As regards the question of immunity from coercion by the courts,

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

1875.
August Term.

John Slack, Sr.,
and others,
v.
John J. Jacob
and others.

the governer of a State occupies a position analogous. rather to the President of the Union than to the heads of the executive departments of the federal government; and the decision that the latter may be compelled by mandamus to perform a mere ministerial duty, is not in point when the writ is sought against the governor. As to all authority specially confided to the governor, whether by the constitution or by statute, it will be presumed that reasons of a conclusive nature required it to be so confided as an authority properly and peculiarly, if not exclusively, pertaining to to the executive department, and therefore not subject to coercion by judicial powers. . In the case in 5th Ohio, St. 528, before named, it was held that "although the governor in the exercise of the supreme executive powers of the State, may,. from the nature of his authority, have a discretion which cannot be controlled by judicial power, yet in regard to a ministerial act, which might have been devolved on any other officer of the State, and affecting any specific private right, he may be made answerable to the compulsory process of this court by mandamus." This last case was decided at December term, 1856.

We have quoted from the syllabus of the two cases last above named as examples of the conflict which is to be found in other cases cited. Under the ninth section of the fourth article of the Constitution, the Governor, as well as other State officers, may be impeached for maladministration, corruption, incompetency, gross immorality, neglect of duty, or any high crime or misdemeanor. The House of Delegates has the sole power of impeachment, and the Senate the sole power to try impeachments.

Other questions were argued in the cause before us, but as we regard the questions we have already determined as amounting to a final disposition of this case, in any aspect that now presents itself to us, we consider that we are not called upon or required to determine further in the cause.

For the foregoing reasons the decree of the circuit court of the county of Kanawha, rendered in this cause on the 18th day of May, 1875, dissolving the injunction awarded in this cause and dismissing the bill filed therein, is affirmed, with costs and $30 damages to the appellees against the appellants.

<div align="right">

1875.
August Term.
———————
John Slack, Sr.,
and others.
v.
John J. Jacob
and others.

</div>

Hoffman and Moore, Judges, concurred.

DECREE AFFIRMED.