# CHARLESTON

STATE *ex. rel.* DILLON *v.* COUNTY COURT.

Submitted August 9, 1906.   Decided October 23, 1906.

| | |
|---|---|
| 60 | 339 |
| f62 | 324 |
| 62 | 392 |

| | |
|---|---|
| 60 | 339 |
| f65 | 590 |

1. TAXATION—*Delegation of Power.*

   Legislative and sovereign in character, the power of taxation is presumed, until the contrary appears, to remain in the law-making body of the state, and a claim of the delegation thereof to local tribunals, whether by legislative acts or constitutional provision, cannot be sustained in the absence of a clear manifestation of intent that the authority claimed shall exist.   (p. 348.)

2. COUNTIES—*Taxation—Legislative Control.*

   County courts are subject to legislative control in respect to the amounts of money they may raise by taxation for county purposes, within the limitation imposed by section 7 of Article X. of the Constitution of this State.   (p. 349.)

3. SAME—*Limitation of Tax.*

   The clause in section 29 of chapter 39 of the Code, as amended by chapter 48 of the Acts of 1905, prohibiting county courts from levying taxes, in the year 1905, which shall exceed, by more than five per cent, the aggregate amount of taxes levied by it in the year 1904, from levying taxes, in the year 1906, which shall exceed said aggregate amount by more than seven per cent, and from levying taxes in the year 1907, which shall exceed said aggregate by more than nine per cent, is not beyond legislative competency by reason of constitutional powers, respecting county levies, possessed by county courts.   (p. 349.)

4. STATUTES—*Local or Special Acts.*

   Said clause of section 29 of chapter 39 of the Code, as so amended, is not violative of section 39 of Article VI. of the Constitution, prohibiting the passage of local or special laws in any of the cases therein enumerated, and requiring the legislature to provide, by general laws, for them and all other cases for which provision can be so made.   (p. 349.)

5. SAME.

   The quality of generality in a law is not necessarily precluded by lack of uniformity, in the full sense of the term, in the results of its operation throughout the state.   (p. 350.)

6. SAME—*Illegal Exception.*

   A legislative act, containing an illegal exception, is not vitiated by the exception, on the ground of want of generality, if, upon the elimination thereof, what remains is in such condition that, had it been so enacted originally, it would have been a complete and general law.   (p. 352.)

7. SAME.

The clause in section 29 of chapter 39 of the Code, above referred to, is not rendered invalid as being special, by the attempted exception of the counties of McDowell and Gilmer from the operation thereof. (p. 352.)

8. CONSTITUTIONAL LAW— *Who May Question Statute.*

Courts will not hear objections to laws, on the ground of unconstitutionality, from persons whose rights are not affected by them. (p. 353.)

9. SAME—*Obligation of Contracts.*

County courts cannot refuse obedience to a legislative act, limiting their powers to raise money, by taxation, for the discharge of existing county debts, on the ground that it is violative of clause 1 of section 10 of Article I. of the Federal Constitution, prohibiting the passage of laws impairing the obligation of contracts. Being mere agencies of the legislature, and not interested in the debts due from them, otherwise than as owing duties to other persons, respecting them, failure to perform which may affect the honor of the state or occasion public expense, matters subject to legislative discretion and power, their interests are not such as to bring them within the protection of said constitutional guaranty. (p. 354.)

Application by the State, on the relation of C. W. Dillon, State Tax Commissioner; for a writ of *mandamus* to the county court of Braxton County and others.

*Writ Awarded.*

Mollohan, McClintic & Mathews, E. G. Rider, and C. W. Dillon, for petitioner.

Jake Fisher and Price, Smith, Spilman & Clay, for respondents.

Poffenbarger, Judge:

The State, at the relation of C. W. Dillon, State Tax Commissioner, invokes the aid of this Court, by its writ of *mandamus*, to compel the county court of Braxton county, composed of the respondents, Jacob Huffman, President, and John I. Bender and E. H. Cunningham, Commissioners, to compel that body to lay a levy for county purposes in accordance with the law. Said court, on the 18th day of July, 1906, at a regular term thereof, made up its estimate of the amount necessary to be levied for the current fiscal year to cover expenses and all county debts and liabilities payable during said year, and then levied, upon every hundred dol-

lars of the valuation of the property taxable in the county, the sum of sixty-five cents, which, as the valuation of property is over ten millions of dollars, would yield more than $65,000.00 in taxes.   This, the court did in violation of that clause of section 29 of chapter 39 of the Code, as amended by chapter 48 of the Acts of 1905, which provides as follows:

"No county court shall in the year nineteen hundred and five assess or levy taxes, including district road taxes, which shall exceed by more than five per cent. the aggregate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and six assess or levy taxes which shall exceed by more than seven per cent. the aggregate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and seven assess or levy taxes which shall exceed by more than nine per cent. the aggregate amount of taxes levied by it in the year nineteen hundred and four.   The word 'taxes' shall be construed to include district road taxes, as well as all other taxes for county purposes.   If the county court of any county shall be of opinion that the maximum fixed by this proviso is insufficient for any of said years, it shall make up an itemized estimate of the expenses to be provided for in such year, with the rate of levy in cents on each hundred dollars of valuation necessary to provide for the payment thereof, and may submit the question of an increased levy to the voters of the county at an election to be held therein on not less than thirty days published notice,  and may make such rules and regulations as may be necessary for the holding of such elections; and if three-fifths of the votes cast on the question of increased levy at such election be in favor of such levy, the county court may levy the amount stated in the notice of election as necessary; but this proviso shall not extend to the counties of McDowell and Gilmer, but in such counties, for said years, the county court may levy taxes under the limitations contained in section 7 article X. of the Constitution of this State."

In the year 1904, there was raised by taxation in said county for county purposes only about $27,596.00.   An additional seven per cent for the year 1906 would make the amount $28,457.00 and the rate to be prescribed,

in order to yield that amount, would be not more than twenty-eight cents on each one hundred dollars valuation.

Resistance to the application is based, first, upon the claim that there is vested in the county court of every county, by the Constitution, the right and power to raise any amount of taxes for general county purposes in any year, which shall not exceed ninety-five cents on each one hundred dollars of the taxable valuation of the property in the county, and an additional amount for the support of free schools, and that the legislature has, therefore, no power to limit or impair that right. Section 24 of article VIII. of the Constitution provides that the county courts shall, "under such regulation as may be prescribed by law, have the superitendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies." Section 7 of article X., relating to the subjects of taxation and finance, reads as follows;

"County authorities shall never assess taxes, in any one year, the aggregate of which shall exceed ninety-five cents per one hundred dollars valuation, except for the support of free schools; payment of indebtness existing at the time of the adoption of this Constitution; and for the payment of any indebtedness with the interest thereon, created under the succeeding section, unless such assessment, with all questions involving the increase of such aggregate, shall have been submitted to the vote of the people of the county, and have received three-fifths of all the votes cast for and against it."

Whether by virtue of these constitutional provisions county courts have unrestricted power to assess and cause to be collected taxes in each year equivalent in amount to ninety-five cents on each one hundred dollars in valuation, depends upon certain principles of constitutional law that are fundamental and run through the whole system of republican government. Like all others in the American states, our Constitution contains many provisions which are intended to secure individual and political rights that are deemed to be of such great importance as to preclude, on the ground of

public policy, their being left to the will and discretion of the executive, legislative and judicial departments. They are safe-guarded by constitutional guaranties which must be observed by all the departments of government exercising sovereign powers. For the better security of all rights and the more harmonious and systematic administration of public affairs and as an effectual restraint upon the exercise of arbitrary power, the Constitution creates, by powers granted and limitations imposed, certain divisions of sovereign power, and then, by subdivision of powers in each of the three great departments of government, executive, legislative and judicial, and the imposition of further limitation upon the powers of all officers and tribunals charged with the execution of the powers belonging to each of these three great departments, respectively, creates a number of jurisdictions in each of which certain functions are required to be performed which are withheld from all the others. In some cases, the subdivisions are territorial; in others, they are authoritative within the same general department, and, in this way, a system of checks upon, and balance of, power is established, not only among the three great divisions of sovereign power, but also among the officers, tribunals and functionaries in each of these divisions charged with the execution of the powers that belong to it, as well as among the people, respectively, inhabiting the several territorial divisions of the state.

In the opinion of the ablest constitutional lawyers and the most celebrated jurists and law-writers of this country, the individual, civil and political rights recognized in the Constitution of the American states are not of constitutional creation or birth. They are older than the constitutions themselves, and constitutions were ordained by the people for the better protection and regulation of the enjoyment of them. The separation of powers was an accomplished fact in all the American colonies before any of the constitutions in the American states were adopted and the purpose of these instruments is rather to preserve that status than to create and vest rights. So, in every colony there were territorial subdivisions, known in some as counties and in others as towns and townships by the officers and tribunals of which certain powers, legislative, executive and judicial, had been exer-

·cised not only from the date of the independence of the states, but from that of the beginning of the life of organized Christian society on the continent. The expediency and necessity of such subdivisions had been demonstrated by experience not only in this country, but in the mother country. In adopting our constitutions, we have simply provided that these institutions. which had grown up with the settlement and development of the country, as agencies for its better government and the due administration of justice and execution of the laws, shall remain, by placing it beyond the power of the executives, the courts and the legislatures to destroy or impair them.

Keeping in view the nature and purpose of constitutions, the courts, in interpreting them, do not always confine themselves to the strict letter of these instruments. They sometimes assume, not that particular rights and powers were granted to persons or tribunals, by implication, but that the right or power in question, as to which the Constitution is silent, already existed at the time of the adoption thereof and that it was not the purpose or design of the people to impair or take it away. This principle was invoked by Judge Cooley in *People* v. *Hurlbut*, 24 Mich. 44, in which the court held that the legislature had no power to appoint the members of the board of public works of the city of Detroit, as permanent officers for the term, provided by the act establishing such board, and that permanent appointments for purely municipal purposes could only be made by municipal authority. The language of the constitution relating to the mode of providing officers for municipal corporations was somewhat vague and uncertain. Judge Cooley thought it was sufficient to prevent the legislature from appointing the officers of the city, but he insisted that, if it were not, the right in the municipality to name its own officers was impliedly recognized in the Constitution. In the course of his opinion, he said: "Constitutional freedom certainly does not consist in exemption from governmental interference in the citizen's private affairs; in his being unmolested in his family; suffered to buy, sell and enjoy property, and generally to seek happiness in his own way. All this might be permitted by the most arbitrary ruler, even though he allowed his subjects no degree of po-

litical liberty. The government of an oligarchy may be as just, as regardful of private rights, and as little burdensome as any other; but if it were sought to establish such a government over our cities by law, it would hardly do to call upon a protesting people to show where in the Constitution the power to establish it was prohibited: it would be necessary, on the other hand, to point out to them where and by what unguarded words the power had been conferred." The same principle was declared by Bates, in his argument in *Hamilton* v. *County Court*, 15 Mo. 5, 13, in the following terms; "What is a Constitution, and what are its objects? It is easier to tell what it is not, than what it is. It is not the beginning of a community, nor the origin of private rights. It is not the fountain of laws, nor the incipient state of government. It is not the cause, but consequence, of personal and political freedom. It grants no rights to the people; but is the creature of their power, the instrument of their convenience, designed for their protection in the enjoyment of the rights and powers which they possessed, before the Constitution was made. It is but the form and frame work of the political government, and necessarily based upon the pre-existing condition of laws, rights, habits and modes of thought. There is nothing primitive in it; it is all derived from a known source. It presupposes an organized society; laws; order; property; personal freedom; a love of political liberty, and enough of cultivated intelligence to know how to guard it against the encroachments of tyranny. A written constitution is in every instance, a limitation upon the powers of government, in the hands of agents. For there never was a written republican constitution which delegated to functionaries all the latent powers which lie dormant in every nation, and are boundless in extent and incapable of definition. Our Constitution in express terms, acknowledges and continues in force all former rights, laws, officers and functions of office. In the body of the instrument, the method of changing them is pointed out, as is the method of changing the Constitution itself." This is partially quoted by Judge Cooley in his work on Constitutional Limitations, page 68.

Counsel for the respondents seem to rely not only upon this principle, but also upon the express terms of the two

constitutional provisions above quoted, wherefore their contention will be examined in the light of both.    The right· guaranteed to county courts to lay and disburse county levies is coupled with the qualification that it shall be exercised under such regulations as may be prescribed by law. It is not denied that the legislature has the power of supervision and control over county courts in the exercise of this right, but it is insisted that that power of control does not extend to any restraint upon them as to the amount of money to be raised.    It is easy to conceive many respects in which this function of regulation may be exercised and yet not extend to the determination of the amount of the levy.    The statute now under consideration is the first direct attempt on the part of the legislature to restrict the authority of the county courts of the state in respect to the amount of the levies to be laid by them; and yet there has been at all· times a statute directing the time at which the levy should be laid, prescribing the manner in which the amount thereof should be determined as well as the modes of collecting and disbursing it.    This uniform practice, together with the language of section 7 of article X., forbidding county authorities to assess taxes in excess of a certain amount, lends apparent countenance to the theory upon which counsel for the respondents proceed, but the proposition arises nevertheless by construction.    There is no express grant of the power claimed.    The assumption that the language of section 7 of article X. is directed to the county authorities and not the legislature, if its soundness could be conceded, would be strong argument against the supervisory power of the legislature, but there is no particular direction in it.    It is found in the article dealing not with county courts or county organization, but with the subjects of taxation and finance.    It assumes the obvious truth that taxes raised for county purposes are to be assessed by county authorities, whether the legislature has any supervisory power over these authorities or not. If such power does exist, then the limitation applies to both the legislature and the county courts, to the latter directly and the former indirectly.

The reserved power of the legislature to regulate seems clearly to extend to the amount of taxes to be raised by

county courts.   It controls the action of these tribunals in respect to those things which create the liabilities to be provided for by levy.   The cost of county government is occasioned by the exercise of police power lodged in the hands of the county authorities, which includes the establishment and regulation of roads, ways, bridges, public landings, ferries and mills and many other things.   The Constitution says county courts shall have the superintendence and administration of these under such regulations as may be prescribed by law.   As there is a clear right in the legislature to control the action of the county courts in respect to those things which occasion the cost and expenses to be provided for by the county court, the legislature, by its regulating power, can make these costs heavy or light as it may deem best.   In so doing, it fixes the amount of cost, and thus, indirectly, the limit of taxes to be raised.   Moreover, the salaries of the county officers, another item in the cost of county government, are not left wholly within the discretion of the county courts.   Maximum and minimum limits are prescribed by the legislature.   All these instances of the exercise of legislative control bear directly upon the question of the amount to be raised for county purposes.   To this, it is to be added that the legislature of this State has, as did the legislature of Virginia at all times, limited the amount to be raised as well as prescribed the times and manner of laying the levies and the mode of disbursing them.   County courts have never had unbridled latitude within the limit fixed by the Constitution.   They have been permitted to raise only so much money in any year as. was necessaay to cover the county debts and liabilities payble during the year, including the probable expenditure for county purposes, the amount of outstanding unpaid orders and proper allowances for delinquent taxes, etc.   Section 29 of chapter 39 of the Code.   It may be that one purpose of this statute is to prevent the accumulation of an idle surplus, on the one hand, and the creation of an indebtedness on the other, and it is true that under it the county court could, at any time, have levied taxes up to the constitutional limit.   Nevertheless, it inhibits the raising of money within that limit, not needed for current expenses and indebtedness.   It is an assertion of power

over the county courts respecting the amounts of the levies to be raised.

The power of taxation is sovereign and purely legislative. *Merriwether* v. *Garrett*, 102 U. S. 472,517; *Heinie* v. *Commissioners*, 19 Wall. 655. In determining the extent to which it is, in respect to local self-government, in the state and in the county authorities, regard must be had to its peculiar nature. It may well be assumed that there is some difference between those powers which are usually exercised by the people, such as that of the election of officers, and those which have been uniformly recognized as belonging to the legislature. The imposition of taxes belongs to the latter class. All power of taxation, not vested in any other body, must be regarded as being in the hands of the legislature. Delegations thereof are sometimes made by that body itself and sometimes by the organic law of the state, for purposes of local self government. Cooley on Cons. Lim. 264. When made by the people through their Constitution, they are neither revocable by, nor subject to the control of, the legislature. *St. Louis* v. *Dorr*, 145 Mo. 466. When made by the legislature itself, the delegated power is revocable. *Merriwether* v. *Grrett*, cited. In determining whether there has been a delegation by the legislature, the courts are bound by the rule of strict construction. "Acts of this class are construed with great strictness. Two concurring principles leading to strict construction apply. Such acts affect arbitrarily private property, and are grants of power. * * * * The power can be delegated by the legislature, but only in plain and unambiguous words. Statutes for that purpose will be construed strictly, and they must be closely pursued; a departure in any material part will be fatal. Any doubt or ambiguity arising out of the terms used by the legislature must be resolved in favor of the public." Lewis' Sutherland Stat. Cons. section 541. The reasons given for this rule are equally applicable in determining whether there has been a delegation or separation of such power by means of constitutional provisions. The power is the same in nature and its possession leads to the same results, whether the claim to it be based upon constitutional provisions or legislative acts. It is so high and extraordinary in character that it is presumed to remain in the leg-

islature until the contrary is shown by express provisions or
the equivalent thereof.

Our conclusion is that two principles unite in denying the
power claimed. County authorities never at any time be-
fore the adoption of the Constitution determined, except by
authority of the legislature, as agencies in its hands, the
amounts of taxes raised for local government. On the con-
trary, they acted as such agencies, recognizing in the legisla-
ture supervisory power over them. Hence it cannot be
maintained that the people, in adopting the Constitution,
recognized a legislative power of this kind in these local
tribunals, which they signified their intention to leave in their
hands, by not expressly divesting them. No clause of the
Constitution either in express terms or by necessary impli-
cation, denies to the law making body the exercise of this
species of legislative power, which must reside in it, if it has.
not been taken away.

Invalidity of the limiting statute, enforcement of which
is here sought, is predicated on the further ground that it is.
violative, in two respects, of that clause of section 39 of
article VI. of the Constitution which declares that "In no
case shall a special act be passed, where a general law
would be proper and can be made applicable to the case."
Instead of prescribing a uniform rate for each county, as.
the limit of the power of taxation, so that each county
may raise taxes proportionate with its taxable wealth, the
Act adopts an arbitrary basis for each county, viz., the
amount of money raised for county purposes in the year
1904, and forbids the laying of ·a levy that will produce
more revenue than was collected in the year 1904 and an ad-
ditional seven per cent. of that amount, in consequence
whereof the limit of taxation in each county bears no nec-·
essary relation to its taxable wealth, and a different maxi-
mum rate of taxation may be established in each county.
This it is urged deprives the act of the quality or character
of generality and makes it special as to every county in the
State, if it extends to all. That it is a special act, forbidden
by the Constitution, is urged upon the further ground that
McDowell and Gilmer counties are excepted from the opera-
tion thereof.

If this act extends to all of the counties of the State, and

for the present this will be assumed, it is clearly general in character except in respect to the results wrought out by it in the several counties. It has some effect in all. It reaches all the territory and all the people of the State. That it does not effect all alike is not conclusive of the question of the want of the necessary element of generality. While the results in the several counties may be, and probably are, different in respect to the limitations imposed, as tested by the relation which the taxes to be raised bear toward the taxable values, they are the same as tested by the relation which the taxes to be raised in each county bear to the taxes raised in the year 1904. The amount of taxes necessary for the annual expenses of a county through a series of years are not greatly variant. The salaries of officers do not appreciably change in amount, witness and jury fees remain about the same, incidental and contingent expenses vary but little, wherefore the legislatures might well have assumed that in adopting the quantum of revenues for the year 1904, as the basis from which to fix the limitation, no injustice would be done and that the effect would be, not technically, but substantially, like or similar in all the sever al counties. For aught that the Court can see, this assumption is well founded and it is clear from this that the statute is general in character, not only in the sense that it reaches the authority of every county, but that it affects them all in a simlar manner. The statute is not uniform in its operation throughout the State, but the constitutional provision under consideration, unlike those of many of the states, is content with the ·requirement of generality only. It does not say that, when practicable, general and not special laws shall be enacted, and that, when enacted, they shall be uniform in operation and effect throughout the State. If it did, the objection urged here would be more serious. Ordinarily, general laws do so operate, it must be confessed. Provisions for the mode of trial by jury, assessment of taxes, election of officers and numerous other acts and proceedings, made by general law, are uniform throughout the State. To allow them to be otherwise would work injurious discriminations and hardships upon the people. These results would be inevitable, for the reason that there are no differences in conditions

upon which discriminations could be based. But many other things which form the subject matter of legislation differ in situation and circumstances, though not in nature or in character, so that variations of the rule, operating throughout the State, so as to meet the exigencies of differing conditions, work out justice, equity and wise results. The decisions of the courts of the various states show a vast number of instances in which classifications of persons, things and localities have been made by the legislatures, and laws passed applicable to some of these classes and not to others, and these laws are regarded as general in character nevertheless. Instances of the exercise of this power may be found in the legislation and decisions of our own State. The statutory provision under consideration is a temporary one which the legislature deemed it expedient to pass as an incident or step in effecting an extensive and all pervading alteration of the tax system of the State. This legislation changed the basis of valuation in every county from that of the cash value of the property, real and personal, to that of the actual market value. In view of the expectation and design that vast increases of value for purposes of taxation would result, this clause was added to section 29 of chapter 39 of the Code to prevent excessive and burdensome taxation at the hands of county authorities by the sudden imposition of levies entirely out of proportion, in the amounts to be exacted, with the sums which tax-payers had previously been called upon to pay. Its purpose was to prevent oppression and hardship upon property owners which it would otherwise have been in the power of county authorities to inflict while the transition from the old to the new basis of valuation is in course of execution. The restraint imposed by it is temporary, being for the period of only three years. This makes it plain that the law is general in still another sense, namely, that of aiding in the effectuation of an important and far reaching modification and alteration of the general tax system, operating upon all the people and all the property of the State. Since, in view of these elements of generality in the statute, it is by no means clear that the legislature, in passing it, has exceeded its powers, we cannot sustain this contention of counsel for the respondents. Statutes

cannot be overthrown by courts as unauthorized unless the want of power in the legislature to pass them is beyond doubt. *Bridges* v. *Shollcross*, 6 W. Va. 562; *State* v. *Mines*, 38 W. Va. 125; *Railroad Co.* v. *Patton*, 9 W. Va., 648; *Mont Clair* v. *Ramsdel*, 107 U. S. 147.

We have no doubt that the exception at the end of the proviso, designed to preclude its operation in McDowell and Gilmer counties can be stricken out without affecting the validity of the proviso itself. Upon striking it out, the language of all that remains will apply to all the counties in the State. When a statute, containing an invalid clause, is so framed that elimination of said clause leaves the residue of it in such form that, if it had been so passed originally, it would have been a complete and valid statute, courts do not declare the entire statute void because of the insertion of the illegal exception. They cut out the exception and uphold the act from which it is eliminated. But for the exception the terms of the act would expressly embrace every county in the State. The exception is an attempt to withdraw from its influence two counties. A well settled rule of construction precludes the overthrow of a statute on constitutional grounds when it may be so construed as to avoid such result. *Slack* v. *Jacobs*, 8 W. Va. 612; *Shields* v. *Bennett*, 8 W. Va. 74. "Constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand though the last fall. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independent of that which was rejected, it must be sustained." *People* v. *Knope*, 183 Ill. 410. See also Cooley's Const. Lim. 178; *State* v. *Barker*, 55 O. St. 1; Lewis' Suth. Stat. Con., section 598.

The remaining ground of defense is predicated upon that part of clause 1 of section 10 of article I, of the Constitution of the United States which forbids the passing of laws impairing the obligation of contracts. In the year 1889, Braxton county, issued, in the manner prescribed by law, a large amount of bonds, the proceeds of which were used in aiding the construction of a railroad. Section 59 of chapter 39 requires county courts in such cases to provide, by an-

nual levies, for the payment of interest on the bonds and for the creation of a sinking fund with which to pay them at maturity. Some of these bonds are now redeemable, but none of them are due in the sense that enforcement of payment thereof can be had, nor will they become so due for a number of years. It is also shown that there are outstanding orders issued by the county court which, as well as the current expenses, must be paid out of the levy of this year. It is probably true that a levy laid in accordance with the requirement of the statute in question will not yield a sufficient sum to pay interest on the bonds, the outstanding orders and the current expenses and contribute to the sinking fund, and it may be that the statute is violative of the provision in the Federal Constitution above referred to. For reasons not to be stated, we are not called upon to decide whether it is or not.

"It is a fairly established principle of law that no one can be allowed to attack a statute as unconstitutional who has no interest in it and is not affected by its provisions. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. All constitutional inhibitions against the taking of private property without due process of law and all constitutional guaranties of equal rights and privileges are for the benefit of those persons only whose rights are affected, and cannot be taken advantage of by any other persons." 8 Cyc. 787, 788. "It is well settled that a statute must be assumed to be constitutional and valid, until some one complains, whose rights it invades." *Speer* v. *Commonwealth*, 23 Grat. 935, 938. The following from Cooley's Contitutional Limitations, 163, was quoted with approval by Judge Snyder in delivering the opinion of this Court in *Shephard* v. *Wheeling*, 30 W. Va. 479, 483: "Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it. On this ground it has been held that the objection that a legislative act was unconstitutional, because divesting the rights of remainder-men against their will could not be successfully urged by the owner of the particular estate, and could only be made on behalf of the remainder-men themselves. *Antoni* v. *Wright*, 22 Grat. 857. And a party who has assented that his prop-

erty may be taken under a statute cannot afterwards object that the statute is in violation of a provision in the Constitution designed for the protection of private property. The statute is assumed to be valid until some one complains whose rights it invades." He also quotes at length from the opinion of Chief Justice Shaw in *Wellington* v. *Petitioners*, 16 Pick. 96, in which the soundest reasons for the refusal of courts to hear constitutional objections to statutes from persons not affected by them are set forth. In the course of the opinion as quoted, Chief Justice Shaw said: "*Prima facie*, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained." The principle is uniformly applied by the Supreme Court of the United States. *Wiley* v. *Sinclair*, 179 U. S. 58, 67; *Bank* v. *Craig*, 181, U. S. 548. In this last case, Mr. Justice Peckham said: "One who does not belong to the class that might be injured by a statute cannot raise the question of its invalidity." For this proposition he cited *Supervisors* v. *Stanley*, 105 U. S. 305; *Clark* v. *Kansas City*, 176 U. S. 114; *Lampasas* v. *Bell*, 180 U. S. 276.

Being of the opinion, hereinbefore stated, that the county court holds its powers respecting the quantum of revenues to be raised each year by delegation from the legislature, as an agency in its hands and under its control, and not by delegation from the people, effected by the Constitution, and so deciding, it follows necessarily that the powers and rights so created are not contractural in their nature. No provision of the Federal Constitution places any restraint upon the powers of the legislature to revoke them. *Meriwether* v. *Garrett*, 102 U, S. 472; *United States* v. *Railroad Co.*. 17 Wall. 322; *Commissioners* v. *Lucas, Treasurer*, 93 U. S. 108. "Institutions of this kind, whether called counties or towns, are auxiliaries of the state in the important business of municipal rule, and cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between them and the legis-

lature of the state, because there is not and cannot be any reciprocity of stipulation, and their objects and duties are utterly incompatible with every thing of the nature of a compact." *Laramie County* v. *Albany County*, 92 U. S. 307, 311.

In respect to the bonds, interest, sinking fund, outstanding county orders, current expenses and other obligations resting upon the county, the legislature, by this statute, merely seeks to control the exercise of the discretionary powers of its own agent, concerning the amount of money it shall use in the payment of current expenses and indebtedness. It permits the raising and expenditure of as much and presumably more money than the court was ever allowed to exact from the people in any previous year, since the levy for 1904 rose to the constitutional limit of ninety-five cents. The creditors themselves thus have a more ample provision, under this limitation of power, for the satisfaction of their debts, than was possible at the time the debts were contracted. If they have been content to wait until this time, and the legislature, in limiting the powers of its fiscal agent, saw fit to assume that they would willingly continue to indulge their creditor, until such time as payment could be more conveniently made, we see no reason, and know of no principle, upon which it can be asserted that the agent, to whom nothing is due may nevertheless precipitate upon itself and the public the burden of the immediate discharge of heavy obligations to others, none of whom are here, or were before the county court, claiming or demanding it. The only contracts that can possibly be affected are those which impose obligations upon and against the county and in favor of persons who are not parties to this action, either in person or by representation. If the statute in question should prevent the enforcement of any of these obligations, it will confer an immediate pecuniary benefit upon the respondent, and inflict no possible detriment other than a taint upon the public honor, and that has been entrusted to the legislature rather than to the county courts. If it merely delays payment, with the consent of the creditors, instead of repudiating the obligations, no detriment of any kind results, except the additional burden of interest, and whether, in view of the financial conditions prevailing

at a given time, a wise public policy demands the procurement of forbearance by its payment, is also a matter within the supervisory power and control of the legislature.

By constitutional provision, the county courts are the levying and disbursing agents in local self government. The Constitution commits to them the *superintendence* and *administration* of the internal police and fiscal affairs of their counties. But in the execution of all these powers, they must act under such regulations as are prescribed by law. Thus the means for discharging their obligations and making improvements are subject to legislative control and may be limited or withheld, not to the material prejudice of a creditor, but certainly as against the county court. The legislature of the state of Tennessee repealed the Charter of the City of Memphis, a corporation against which many thousands of dollars of indebtedness existed, and its powers to terminate the existence of the corporation, notwithstanding its debts, was upheld by the unanimous opinion of the Supreme Court of the United States. *Meriwether* v. *Garrett*, 102 U. S. 472, 511. Its relation to the contracts of indebtedness, as obligor, did not bring it within the protection of any guaranty of the Federal Constitution. The contracts were not destroyed or impaired by the repeal of the city charter. They survived and it remained for the state to make provision for them. It was not assumed in that case, nor can it be here, that the state intended to repudiate public obligations or unreasonably postpone performance. Mr. Justice Field said the legislature had "thus provided against future claims from the improvidence or recklessness of the new government," and that "The power of the state to make this change of local goverment is incontrovertible."

If, then, we are correct in the conclusion that the legislature may control county courts in respect to the amounts of revenue they may raise, it is perfectly manifest that they must pay their debts with such funds as the legislature allows them to provide for the purpose, and expend in public improvements only so much as they may be able to obtain for that purpose out of the amount they are allowed to collect: and, if the legislature, by any restrictions it may

impose, should contravene the rights of creditors in violation of a clause of the Federal Constitution, the creditors alone may complain.   This proposition harmonizes with the decison of the Federal Supreme Court in *Board of Liquidation* v. *Louisiana*, 179 U. S. 622, (45 Law Ed. S. C. 347.)

Entertaining the views herein expressed, we award the peremptory writ of *mandamus* prayed for.

*Writ Awarded.*