# CHARLESTON.

## DUNCAN v. THE BALTIMORE & OHIO R. R. CO.

Submitted March 16, 1909.   Decided November 29, 1910.

JUSTICE OF THE PEACE—*Appeal—Constitutional Law.*

> The statute, Code 1906, chapter 50, section 163, limiting appeals from justices to cases involving more than fifteen dollars is constitutional and valid.

Error to Circuit Court, Lewis County.

Action by R. W. Duncan against the Baltimore & Ohio Railroad Company. Judgment for plaintiff before a justice, and, from a judgment of the circuit court refusing petition for an appeal, defendant brings error.

*Affirmed.*

W. W. *Brannon,* for plaintiff in error.

ROBINSON, PRESIDENT:

The case presents a single question: Is the statute which restricts appeals from judgments of justices to cases involving more than fifteen dollars a constitutional and valid one?

It is submitted that the act limiting appeals to cases involving the amount named, Code 1906, chapter 50, section 163, is violative of the constitutional provision in relation to appeals from judgments of justices, which reads: "Appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law." Const. Art. VIII, section 28. It is said that this provision of the constitution allows appeals from judgments of justices regardless of the amount involved in any case, and that the statute infringes on the right to appeal guaranteed by the constitution. So it is insisted that any case in which a justice has rendered a judgment may be appealed. The argument is made that the Legislature could only prescribe method in regard to taking appeals from justices—that the law-making body could do no more than prescribe a mode of procedure in regard to the allowance of such appeals. The word "manner" used in the provision of the constitution which we have quoted is pointed out to justify this view and construction.

The provision of the constitution to which we have referred is an amendment adopted in the year 1880. Prior to the adoption of this amendment, the constitution of 1872 merely recognized the right to appeal from justices by providing that the county court should have jurisdiction of such appeals, and no inhibition against legislation regulating the character of appeals from justices was prescribed. Immediately following the adoption of the constitution of 1872, at a session of the Legislature called for the purpose of more completely putting the new constitution into operation, an act like the one that is now questioned was passed, except that the amount which characterized appeals from justices was fixed at ten dollars. Acts 1872-3, chapter 226, section 117. So for many years before the amendment of 1880, it had been our policy to allow appeals from justices in such manner as was prescribed by law. It had been our legal manner or custom for the Legislature to characterize the cases in which these appeals should be allowed. Now, was a change in this particular intended by the amendment? We know as a matter of state history that the amendment of 1880, revising all that part of the constitution relating to the judicial department, was brought about really for a reform of the county court system. Naturally some other changes were made, but the moving cause of any change was dissatisfaction with the county courts as then constituted. Again we ask, was it intended to change the system in regard to appeals from justices— was it intended to depart from the long existing policy of leaving to the Legislature the power to say what cases should be appealed from justices? If a change in that particular was intended, it was not plainly written into the amendment. Indeed that amendment seems to iterate the former policy. And does not this former policy serve to explain the use of the language of the amendment? Appeals from justices were being allowed as prescribed by law. They were being allowed in such cases as the Legislature deemed proper. Did the direction that they should be allowed in such manner as may be prescribed by law work a change? If it had been so intended would not the amendment plainly have stated that in *all cases* appeals from justices should be allowed? Why was language used that practically pronounced the very process already in vogue? If a change was intended, it would seem that the words of the

amendment would have departed more specifically from any meaning of that mode already practiced.

And immediately following the adoption of the amendment came the Legislature of 1881, which re-enacted the very statute in relation to allowing these appeals that existed under the unamended constitution, with an amendment of the act, however, making the amount necessary for an appeal to exceed the sum of fifteen dollars instead of ten. Acts of 1881, chapter 8, section 163. This amendment of the statute shows that the legislative mind was specifically directed to the act. It shows that the law-makers recognized that it was within the legislative power, under the amendment just adopted, so to legislate. Here we see a direct contemporaneous legislative construction of the constitutional provision that is involved in this case. Since that day the statute has remained the same as then re-enacted. And the contemporaneous construction given the provision of the constitution by the people through their representatives in that Legislature has ever since that time been generally and acceptably recognized. Litigants have scarcely questioned that construction, and no court, so far as we are informed, has refused to accept it. Throughout these years it seems to have been conceded that this provision gave the Legislature the power in relation to appeals which it exercised. It seems to have been conceded by the contemporaneous legislative construction, and by general practical construction which has followed, that the provision merely directed that there should be established by law that system of appeals from justices which the Legislature should deem proper. And such construction is by no means an unreasonable one.

The language of the provision is not opposed to the construction adopted and followed. The text is readily susceptible of that construction, as we shall show. It is surely a consideration of great weight that those who were familiar with the intention of the new provision gave it an interpretation of which it was susceptible. Even if the contrary meaning is also within the words used, we must in reason believe that those acting upon the provision at a time when its intents and purposes were best known gave it the force that was intended in its making. Their construction not being plainly against the letter, if the clause is of doubtful meaning, we must yield to the presumption that

they were right in the interpretation which they gave. And the general and continued acceptance of this construction that was first given is likewise a consideration of weight. Judge Cooley says: "Where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention." Const. Lim. (Sixth Ed.) 82.

The provision only says generally that appeals shall be allowed. It does not say that in *all cases* they shall be allowed. It merely pronounces that an appellate system shall exist in regard to judgments of justices. The mere expression "appeals shall be allowed from judgments of justices of the peace" does not command that such appeals be allowed in all cases—it does not command that no cases be rejected. For, though the statute prescribes only certain cases in which appeals shall be allowed, still it obeys the constitutional mandate, since it does allow appeals. The constitution does not define how many or what kind of appeals from justices shall be allowed. It only commands that there shall be appeals from judgments of justices. The command has been complied with in the making of the statute. An appellate system has been devised for cases from justices. The constitution does not prescribe that all cases shall be included in it. Appeals *are* allowed by statute. The constitutional command has been obeyed. Let us illustrate: A direction to a servant that he shall bring apples from the cellar, without naming the number or kind, is certainly complied with if he brings up only the largest and leaves those that he deems fit to reject. By such direction he does not understand that he is to bring up all of the apples. He complies when he brings only the apples that he selects. And he is not restricted as to the selection that he shall make.

Now, since the constitution does not say that all cases shall be appealed, and does not define the character of cases that shall be appealed, what limitation or restriction has been placed on the Legislature in rejecting certain cases? That law-making body at all times has supreme power within the limits defined by the constitution. It has rejected small cases, but the con-

stitution did not forbid that it should not. It has complied with the provision, because it has prescribed a law allowing appeals. It was not told to allow all cases to be appealed, but merely to allow appeals. Wherein has it exceeded the direction? The mandate was silent as to the character of appeals that should be allowed. Then, pray, what restriction on the Legislature existed in relation to fixing the character?

Indeed, a most reasonable interpretation of the clause of the constitution under consideration is, simply, that the Legislature shall make provision for appeals from judgments of justices. Most evidently it was so understood by those who made it. They promptly gave it this meaning, and proceeded to carry out the mandate in that light. They construed the words "appeals shall be allowed from judgments of justices of the peace in such manner as may be prescribed by law" only mean that by law a process of appeal from justices should be prescribed. They did not see in the clause a limitation on the Legislature in prescribing that process. They saw nowhere in the constitution a direction that in every case an appeal should lie. They were not limited in prescribing such appellate process.

The provision of the constitution directs tne allowance of appeals from justices "in such manner as may be prescribed by law." Do not these words justify the exclusion of some cases from appeal? May not appeals be allowed in a manner that excludes cases involving less than fifteen dollars? The word "manner" is derived from the Latin *manus,* the hand. It literally means the handling of a thing. It, therefore, in this sense, implies more than method. *Bridges* v. *Shallcross,* 6 W. Va. 562; *Pitcher* v. *Board of Trade,* 20 Ill. App. 326. So it may be said that appeals from judgments of justices shall be allowed by such handling of the subject as may be prescribed by law. Cannot there be a handling of the allowance of appeals so as to exclude small cases? The Legislature has handled the subject in that way. It has dealt with the allowance of appeals in that manner. It has prescribed that manner by law. Thus it has obeyed the constitution.

We cannot overthrow a statute as contrary to the constitution unless it is plainly violative of that instrument. Every doubt, all presumption must be held in favor of the act. Relative to overthrowing a statute, Judge Brooke once wrote: "I

have said it was a delicate question.    This results from the different functions of the various departments of the government.    The Legislature is elected by the people; come immediately from the people; and they take an oath to support the constitution.    They make the laws; and many of the members are able lawyers.    It should not therefore be in a doubtful case that the acts of that body should be decided by the courts to be unconstitutional." *Sharpe* v. *Robertson,* 5 Grat. 642.    Clearly are we of the opinion that the case at hand is not one in which the court should exercise a power that it must always use most cautiously.

The judgment of the circuit court refusing the petition for an appeal will be affirmed.

*Affirmed.*