THE STATE ROAD COMMISSION OF WEST VIRGINIA, *a Corporation* v. THE COUNTY COURT OF KANAWHA COUNTY, *a Corporation*

(No. CC 454)

Submitted March 30, 1932. Decided April 12, 1932.

*Howard B. Lee,* Attorney General, *R. A. Blessing* and *R. Dennis Steed,* Assistant Attorneys General, for plaintiff. *Robert S. Spilman* and *R. G. Kelly,* for defendant.

HATCHER, PRESIDENT:

In this action, the State Road Commission seeks to recover from the County Court of Kanawha County certain moneys which the commission expended for rights of way for state roads within the county. The circuit court sustained a demurrer to the declaration, and, upon the joint application of the parties, certified the questions arising on the demurrer to this court.

There are several matters certified but they all merge into the one question: Is section 31, chapter 6, Acts 1923, constitutional? The gist of the section (hereinafter referred to as the Act) is that the commission may acquire any lands necessary (from any cause) ''for the purpose of constructing, widening, straightening, grading or altering a state road,'' and that the county court of the county in which the road is situated shall pay for such lands. Learned counsel for the defendant contend that the section is opposed to the best administrative interests of the county and is repugnant to the powers and limitations of county courts expressed in the constitution, Article VIII, section 24, and Article X, sections 6, 7 and 8. Section 24 confers on county courts superintendence and administration of the fiscal affairs and roads of their counties ''under such regulations as may be prescribed by law.'' Section 6 forbids the state to loan its credit to or assume the indebtedness of a county. Section 7 limits the annual assesment of county taxes to ninety-five cents per hundred dollars valuation (except under certain conditions which do not exist in this case); and section 8 limits the amount for which a county may become indebted to five per centum of the value of its taxable property.

We shall not concern ourselves with questions relating to the policy of the Act, as these questions are solely for the legislature. In 1 Cooley's Constitutional Limitations (8th Ed.), p. 346, our restriction is thus stated: ''The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expediency with the law-

making power." Accord: *Sharpe* v. *Robinson*, 5 Gratt. 518, 617; *Bull* v. *Reed*, 13 Gratt. 78, 98-9; *Slack* v. *Jacob*, 8 W. Va. 612 (pt. 6 of syl.); *Herold* v. *McQueen*, 71 W. Va. 43, 48, 75 S. E. 313; Lewis' Sutherland, Statutory Construction (2nd Ed.), sec. 85; 6 R. C. L., subject Constitutional Law, sec. 108; 12 C. J., subject Constitutional Law, sec. 173. We say, as was said by the Supreme Court of the United States, in *County of Mobile* v. *Kimball*, 102 U. S. 691, 704, it may be that in some instances the provisions of the Act are "harsh and oppressive"; it may be that it would have been fairer to have provided payment from regular state funds for lands acquired by the commission; "but this court is not the harbor, in which the people of a city or county can find a refuge for ill-advised, unequal and oppressive state legislation," even if the enactment should be so considered. We shall look only to the authority of the legislature to make this requirement of county courts. That authority depends (1) on the general power of the legislature, and (2) on the special power conferred by the so-called "good roads amendment" to the constitution in 1920.

(1) The general powers of the legislature are almost plenary as it can legislate on every subject not foreclosed by the constitution itself. "The test of legislative power is constitutional restriction; what the people have not said in the organic law their representatives shall not do, they may do." *Russ* v. *Commonwealth*, 210 Pa. 544. Accord: *Sharpe* v. *Robinson, supra,* p. 616; *Bridges* v. *Shallcross*, 6 W. Va. 562, 574-5; *Slack* v. *Jacobs, supra,* p. 637; *Ry. Co.* v. *Conley and Avis*, 67 W. Va. 129, 187, 67 S. E. 613; *Booten* v. *Pinson*, 77 W. Va. 412, 425-6, 89 S. E. 985; *State* v. *Page*, 100 W. Va. 166, 169, 130 S. E. 426; Sutherland, *supra,* sec. 81; Cooley, *supra,* p. 175, et seq; 6 R. C. L., *supra,* sec. 152; 12 C. J., *supra,* sec. 168. The powers of a state legislature are not to be confused with those of Congress. The federal constitution is a grant of power, while a state constitution is a restriction of power. In other words, we look to the federal constitution to see what Congress may do; we look to a state constitution to see what the legislature may not do. This thought is expressed in almost the same language

in one of the first cases decided by this court, *Ex parte Stratton,* 1 W. Va. 304, 305. It was repeated in *Ex parte Hunter,* 2 W. Va. 122, 161, and has never since been questioned in this jurisdiction. See generally 12 C. J., *supra,* secs. 157 and 167; Cooley, *supra,* pp. 354-5.

Whether the legislature has a certain power (not directly withdrawn) is not to be decided simply by marshalling the reasons for and against and then determining on which side is the weight of argument. The negation of the power must be manifest *beyond reasonable doubt.* This rule had become settled as early as 1811, when the supreme court of Pennsylvania declared: "It must be remembered however, that for weighty reasons, it has been assumed as a principle in construing constitutions, by the Supreme Court of the United States, by this court, and every other court of reputation in the United States, that an act of the legislature is not to be declared void, unless the violation of the constitution is so manifest as to leave no room for reasonable doubt." *Commonwealth* v. *Smith,* 4 Binney 117, 123. Accord: *Osburn* v. *Staley,* 5 W. Va. 85; *Bridges* v. *Shallcross, supra;* *ex parte McNeeley,* 36 W. Va. 84, 95, 14 S. E. 436; *South Morgantown* v. *Morgantown,* 49 W. Va. 729, 40 S. E. 15; *State* v. *County Court,* 60 W. Va. 339, 351-2, 55 S. E. 382; *Duncan* v. *Ry. Co.,* 68 W. Va. 293, 297, 69 S. E. 1004; *Booten* v. *Pinson, supra; Bates* v. *Commission,* 109 W. Va. 186, 187, 153 S. E. 305; Sutherland, *supra,* sec. 82; Cooley, *supra,* p. 371-2; 1 Bryce, The American Commonwealth, 430; 6 R. C. L., *supra,* secs. 73 and 98; 12 C. J., *supra,* secs. 221-2.

(2) The special authority conferred by the amendment of 1920 is as follows:

"The legislature shall make provisions by law for a system of state roads and highways connecting at least the various county seats of the state, and to be under the control and supervision of such state officers and agencies as may be prescribed by law. The legislature shall also provide a state revenue to build, construct and maintain, or assist in building, constructing and maintaining the same and for that purpose shall have power to authorize the issuing

and selling of state bonds, the aggregate outstanding
amount of which, at any one time, shall not exceed
fifty million dollars."

The amendment, as the later expression of the popular
will, would prevail over anything to the contrary in former
constitutional provisions. Cooley, *supra,* p. 129. The amend-
ment in fact confers but little if any power on the legislature
which it did not already have, except the power to issue
bonds. It does dispel, however, any doubts which could
possibly arise as to the regency of the legislature over such
roads as should be included in the state system. The law
relative to the power of the legislature to finance the construc-
tion of the state roads is well settled. "When any public
work is authorized, it rests with the Legislature, unless re-
strained by constitutional provisions, to determine in what
manner the means to defray its costs shall be raised. It may
apportion the burden ratably among the counties or other
particular sub-divisions of the state, or lay the greater share
or the whole upon that county or portion of the state specially
and immediately benefitted by the expenditure." *County of
Mobile* v. *Kimball, supra,* p. 703-4.

Counsel for defendant contend that the amendment im-
plies that the road system shall be constructed entirely from
a state fund. This implication is based on the familiar
maxim *expressio unius est exclusio alterius.* Broom warns
that "great caution is necessary in dealing with the maxim,"
for "it is not of universal application." Legal Maxims
(9th Ed.) 421. Opposed to this maxim is another canon of
construction raised by the supreme court of New Jersey in
considering a constitutional question, which is as follows:
"If a written instrument, framed to declare the rights of
parties omit a matter that was present to the minds of each,
the fact that such matter was not put in writing is conclusive
of the intention of the framers of the instrument to leave it
out." *Atty. Gen'l.* v. *McGuinness,* 49 Broom 346, 375. So
if this question were now *res integra* ("a new or unopened
thing"), the contention would be merely debatable, with at
least a permissible doubt against it. "To doubt only is to

affirm" legislative action, said Judge Brannon, in *McNeeley ex parte, supra.* He was but concurring with the great Chief Justice who said: "On more than one occasion this court * * * has declared that in no doubtful case will it pronounce a legislative act to be contrary to the constitution." *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 625.

At any rate, say counsel, "we find no authority in the constitution which authorizes or contemplates the establishment of a system of roads by the state to be paid for in whole or in part by the counties. * * * Such procedure is, we submit, contrary to both the letter and the spirit of section 24 of Article VIII." The absence of a constitutional provision conferring special power on the legislature to require counties to make this payment is without significance. The material fact is, that there is no constitutional prohibition against the requirement, and as heretofore shown, the legislature needs no special authority to act where that action has not been interdicted.

The letter of section 24, relied on by counsel is: "They (County Courts) shall also, under such regulations as may be prescribed by law, have the superintendence and administration of * * * fiscal affairs of their counties, including the establishment and regulation of roads, * * * with authority to lay and disburse the county levies." The word "superintendence" in the section implies the right of oversight, of direction and of local control; but it does not carry the thought of absolute control over the roads and the fiscal affairs of the county. This is necessarily true not only from the proper significance of the word, but, because (a) public highways belong to the public at large, the legislature alone represents the public and alone has dominant authority over the highways *(Norfolk City* v. *Chamberlaine,* 29 Gratt. 534, 538; *City of Richmond* v. *Smith,* 101 Va. 161, 166-7, 43 S. E. 345; *Arbenz* v. *Ry. Co.,* 33 W. Va. 1, 10, 10 S. E. 14); and (b) the power of taxation is vested exclusively in the legislature *(Mackin* v. *County Court,* 38 W. Va. 338, 339-340, 18 S. E. 632). In advocating that the words "with authority to lay and disburse the county levies" emancipated county courts from legislative control, counsel overlooked

*Dillon* v. *County Court,* 60 W. Va. 339, 55 S. E. 382, which holds: "County courts are subject to legislative control in respect to the amounts of money they may raise by taxation for county purpose, within the limitation imposed by section 7 of Article X of the Constitution of this State." Since that decision, the subjection of county courts to the legislature is not even an open question in this state. *Pfalzgraf* v. *County Court,* 73 W. Va. 723, 725-6, 81 S. E. 397; *Huntington* v. *Commission,* 84 W. Va. 81, 84, 99 S. E. 285. The relation which counties bear to the state must not be overlooked. The state is the sovereign, and counties are mere territorial subdivisions for purposes of convenience. Whatever of power is had by county courts was delegated by the state. It is familiar law that this power may be supervised by the legislature in the interest of public exigencies. 15 C. J., subject Counties, sec. 53; 7 R. C. L., subject Counties, sec. 6. It is equally clear that the construction of state highways is such an exigency. "The legislature has the power to establish a state road and cast the cost and expense thereof upon the county in which the road lies, and this without submitting the question in any form for approval by the county commissioners or any other county officers or the people of the county." *The State* v. *Commissioners,* 28. Kan. 431. Accord: *State* v. *Cummings,* 130 Tenn. 566; 1 Cooley on Taxation (3rd Ed.), 212; 1 Desty on Taxation, Chapters IV and V; 15 C. J., *supra,* sec. 283; Elliott Roads and Streets (4th Ed.), Chapters XIX and XXI. The federal district court, Southern District West Virginia (3 judges sitting), has held in relation to this very Act: "It is contended on behalf of the plaintiff that the legislature of West Virginia exceeded its power by attempting to compel county courts to use county funds for rights of way for state highways. We are of the opinion that the legislature has such power." *Trust Co.* v. *College,* 50 Fed. (2d) 424, 429. Counsel say: "This is an incidental holding upon a collateral matter." It is not necessary for us to analyze the federal case; the opinion states that it was a point of contention, and the holding represents the deliberate judgment of an able court thereon.

It will not be denied that the legislature might require the counties to collect a tax with which the road commission could purchase necessary rights of way for the road system. What difference to the people whether the levy is called a "state tax", "special state tax", "special county tax", or just plain "county tax"? The county taxpayers would pay the tax just the same, no matter how it was designated. Also what difference whether the county courts (after collecting the tax) pay the property owners immediately for the rights of way taken by the commission or forward the money to the commission for it to make the payments? In the final analysis the matter is largely one of mere *terms*. In providing that the county courts shall make the payment for the state, the legislature has in effect *provided a state revenue*.

As to the Act's opposing the spirit of the section, the general rule is that courts will not invoke a supposed spirit of the constitution against an enactment, as this would be entering the field of conjecture. *Osburn* v. *Staley, supra;* 12 C. J., *supra,* sec. 171. Mr. Cooley says without qualification: "Nor are the courts at liberty to declare an act void, because in their opinion, it is opposed to a spirit supposed to pervade the constitution but not expressed in words." Cooley, *supra,* p. 351.

The letter of Article X, section 6, may oppose the Act, though this is disputable. In the debates at the Wheeling Convention which formulated this provision, the discussion related solely to state aid or credit to corporations for local and sectional improvements. See manuscript report of the convention, for the period February 1st to February 4th, inclusive, 1862, Department of Archives and History. See also sketch "Formation of West Virginia," 1 W. Va. Law Reports 72. The language as well as the history of the section demonstrate that it has reference to state aid and state payments in matters of territorial interest to the county, and not to a situation like this where the advancement made the county by the state is essentially in the interests of the entire state. Sedgewick *(supra,* 418) warns that "a strict adherence to the mere letter of a written constitution would render our system practically intolerable." This warning in

secular matters parallels that of St. Paul's in spiritual—"The letter (of the testament) killeth." We will heed these sages. However, in holding that Article X, section 6, does not apply to the Act, we are not to be taken as favoring the other extreme—"a loose and careless mode of interpretation."

As to payments for rights. of way for the system increasing the county levies to more than ninety-five cents per one hundred dollars (Art. X, sec. 7), or increasing the county indebtedness beyond five per centum of the value of the taxable property (Art. X, sec. 8), these are mere fears conjured up by counsel. The Act has been in operation now some eight years. A large majority of the county courts have complied with it. Yet there has not been a single case before us which presented an actual infraction of Article X, sections 7 or 8. There is, of course, a vital distinction between a constitutional power and the exercise of that power in an unconstitutional manner. Forebodings that the road commission will attempt to have county courts violate these sections have no practical part in this consideration. The Constitution checks the commission just the same as it checks the county court. Under settled law we must assume that the commission will perform its duties legally and in doing so will take notice of the fiscal affairs of the county where additional rights of way are needed, and govern itself accordingly. "A court will not anticipate prospective conditions which may never arise in order to declare a law unconstitutional; and a statute is not to be upset on hypothetical and unreal possibilities if it is valid according to the facts as they exist." 12 C. J., supra, section 219.

And finally, against defendants' contention is also the practical construction of the legislature and of the courts both county and circuit. While legislative exposition of a constitutional provision is not conclusive, it is entitled to "great weight", particularly when made almost contemporaneously with the provision (as in this instance). It should not be rejected unless "manifestly erroneous." See opinion of Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 418; Sedgewick, Statutory and Constitutional Law (2nd Ed.) 412, 413; Cooley, supra, 144, et seq.; 6

108

R. C. L., *supra*, sec. 60. During the years following the Act, the commission has exacted of county courts all over the state, payment for rights of way, needed in the state roads system. For eight years the courts of both county and circuit generally have acquiesced in the Act. The declaration in this case alleges that the county court of Kanawha County from time to time promised to pay the moneys sought in this action, which would indicate even its acquiescence. This general acceptance of the Act by the courts is also entitled to weight. In *Stuart* v. *Laird,* 1 Cranch. 95 (299), the Supreme Court of the United States held that a practical exposition of the constitution by the courts—little, if any, more pronounced than in this case—was "too strong to be shaken or controlled." We need not go so far, but we do say that the exposition of the legislature and of the courts cumulate considerations in favor of the Act, with "a plausibility and force" which we cannot resist. *C. & O. Ry.* v. *Miller,* 19 W. Va. 408, 420; *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715; *State* v. *Kittle,* 87 W. Va. 526, 105 S. E. 775.

We therefore hold the declaration sufficient at law and reverse the ruling of the circuit court on the demurrer.

*Reversed.*